SAULCY LAND COMPANY; William
Saulcy; and Richard Rakness,
Appellants (Defendants),

v.

Jeffrey John JONES and Denise R.
Jones, Appellees (Plaintiffs).

Ellin Wynn and Michael D. Wynn, a/k/a
Mac Wynn Appellants (Defendants),

v.

Jeffrey John Jones and Denise R.
Jones, Appellees (Plaintiffs).

Nos. 98–106, 98–107.

Supreme Court of Wyoming.

July 2, 1999.

Timothy W. Miller of Reeves & Miller,
Casper, Wyoming, Representing Appellants
Saulcy Land Company, William Saulcy and
Richard Rakness.

Michael Schilling and Gregory L. Winn of
The Law Firm of Michael Schilling, Laramie,
Wyoming. Argument by Michael Schilling,
Representing Appellants Ellin Wynn and Mi-
chael D. Wynn.

R. Michael Vang and Craig Kirkwood of
Kirkwood, Nelson & Vang, P.C., Laramie,
Wyoming. Argument by R. Michael Vang,

Representing Appellees Jeffrey John Jones and Denise R. Jones.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

This case comes to us after a bench trial before the district court upon ·a complaint filed by Appellees Jeffrey John Jones and Denise R. Jones (Joneses) against multiple defendants[1] for damages for the improper disbursal of the Joneses' $50,000.00 earnest money deposit following a failed real estate transaction. The district court determined the sellers (Wynns) breached the contract when a condition precedent to the sale was not met, and the realtor (Saulcy) breached its fiduciary duty when it disbursed the earnest money deposit after receiving notice of a dispute between the parties.

In Case No. 98–106, Saulcy appeals from the trial court's decision, claiming Wyo. Stat. Ann. § 33–28–122(f) allows the realtor to pay out disputed funds at its discretion. In Case No. 98–107, the Wynns appeal from the trial court's decision that they breached the contract when they failed to get approval for the sale from Key Bank (Bank).

We affirm, but for reasons different from those relied upon by the trial court. The sale between the Wynns and the Joneses was dependent upon bank approval of the sale. This simply did not occur by the September 20, 1994, closing date. Therefore, the condition precedent was not satisfied, and Saulcy, according to the terms of the contract, should have returned the earnest money to the Joneses. As a result, the Wynns improperly received money belonging to the Joneses, and Saulcy breached its fiduciary duty to the Joneses.

---

* retired November 2, 1998

1. The defendants in this action included:
 1. Otis Wynn (who passed away in 1996); Ellin Wynn, his wife; and Michael D. Wynn a/k/a Mac Wynn, their son; (collectively referred to as the Wynns);
 2. Richard Rakness, William R. Saulcy Jr., and Saulcy Land Company, Inc., (collectively referred to as Saulcy);
 3. Leland Thomas Grieve d/b/a/ Western United Realty; Electronic Realty Associates,

## ISSUES

The Wynns present the following statement of the issues in their brief of appellants:

1. Whether the Trial Court erred as a matter of law when it concluded that the nonoccurrence of a condition precedent constituted a breach of contract by the Wynn Appellants?

2. Whether the Trial Court's conclusion that Key Bank did not approve the sale of the property to the Jones' is clearly erroneous or contrary to the great weight of the evidence?

3. Whether the Trial Court erred as a matter of law when it concluded that the Wynn Appellants' request for disbursal of the earnest money on September 30, 1994, constituted a breach of contract for sale of real property?

The Saulcy appellants submit these issues:

1. Whether the trial court misinterpreted Wyo. Stat. § 33–28–122(f) (1997)[?]

2. Whether the trial court misinterpreted the forfeiture [sic] date under the contract[?]

As appellees, the Joneses portray the issues as:

I. Did the Wynn Appellants perform their condition precedent under the parties' contract, which would therefore allow them to demand performance by the Appellees and declare a forfeiture under the parties'. contract?

II. Did the Saulcy Appellants breach their fiduciary duties to the Appellees pursuant to W.S. § 33–28–122(f) and Wyoming Real Estate Commission Trust Account Guidelines, when they dispersed [sic] the Appellees' earnest money deposit with knowledge that there was a dispute concerning those funds and they had neither

Inc. a/k/a ERA, a Delaware Corporation, ERAGP, Inc. a Delaware Corporation, and Electronic Realty Associates, L.P. an Illinois Limited Partnership.

The district court's rulings in this case dismissed the claims against all of the defendants except the Wynns and Saulcy, who appeal from the court's judgment against them in the case at bar.

gotten written consent from the Appellees for the dispersal [sic] of those funds or filed an interpleader with a Court of competent jurisdiction to determine the rights of the parties to the funds?

## FACTS

The subject of this lawsuit is a ranch in Carbon County, Wyoming, known as Robbers Roost Ranch. The record owners of the ranch were Otis and Ellin Wynn. Their son, Michael "Mac" Wynn, managed the ranch for his elderly parents. The Wynns placed the ranch for sale on an open listing with ERA through Saulcy in April of 1994. The Joneses signed a form captioned "OFFER, ACCEPTANCE & RECEIPT (OPTION TO PURCHASE) (FARM AND RANCH AND VACANT LAND)" on July 21, 1994. In response to that offer from the Joneses, the Wynns presented a counter offer. The Joneses accepted the counter offer on July 29, 1994. The offer and counter offer, once accepted by the Joneses, constituted a contract to purchase the ranch for $700,000.00. The contract provided that the Joneses put $300,000.00 down, with the remaining balance of $400,000.00 paid according to the terms of a contract for deed. The contract for deed was to call for the Joneses' payment of the existing Key Bank loan on the property at the time of closing (approximately $303,-000.00) and the balance to the Wynns in equal annual installments for fifteen years.

The terms of the contract required the Wynns to use their best efforts to get the Bank's approval for the purchase. All parties agree that the Bank's approval of the transaction was a condition precedent to the Joneses' purchase of the ranch.

After learning that the Bank would require a written contract to ensure that they approved of the deal's structure, the Wynns failed to submit anything to the Bank concerning the sale of the ranch. On September 6 and 15, 1994, the Joneses sent correspondence to Saulcy requesting the return of their $50,000.00 earnest money deposit. They based their request on information from the Bank that it would not approve the terms of the purchase contract. The Wynns also requested the earnest money from Saul-cy, which was disbursed to them on September 30, 1994, but not before the Wynns signed an agreement indemnifying Saulcy for disbursing the money. Saulcy took $20,-000.00 of the earnest money for its services, and the balance was paid to the Wynns, less some costs.

The Joneses filed this action to recover the $50,000.00 earnest money deposit, plus legally allowable interest, punitive and exemplary damages, and costs, attorney's fees and such other relief as may be just and proper. Following summary judgment motions, the only surviving claims were against Saulcy and the Wynns. The defendants argued that the Joneses breached the contract, which entitled the Wynns to the $50,000.00 deposit; and because Saulcy properly paid the deposit to the Wynns, the Joneses' claims against Saulcy are precluded.

Following a bench trial, the district court concluded that the Joneses should prevail on their breach of contract claim as to the Wynns and on their breach of fiduciary duty claim as to Saulcy. The defendants prevailed on all other claims. Saulcy appealed from that decision, and the appeal was docketed as Case No. 98–106. The Wynns also appealed, and their appeal was docketed as Case No. 98–107. The Joneses filed one brief for both cases, and we heard oral argument of the cases together.

## DISCUSSION

### Standard of Review

 This case presents us with a factual issue and questions of contract and statutory interpretation. In Case No. 98–107, the parties agree that the contract is not ambiguous. Interpretation of the language of an unambiguous contract is a matter of law. *Union Pacific Resources Co. v. Texaco, Inc.*, 882 P.2d 212, 219 (Wyo.1994). Resolution of Case No. 98–106 requires interpretation of Wyo. Stat. Ann. § 33–28–122(f). Statutory interpretation is also a question of law. *Corkill v. Knowles*, 955 P.2d 438, 440 (Wyo.1998). Our standard of review when a trial is held before the bench, rather than a jury, was set forth in *Springer v. Blue Cross and Blue*

*Shield of Wyoming,* 944 P.2d 1173, 1175–76 (Wyo.1997):

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* We review a district court's conclusions of law *de novo* on appeal. *Id.*

*The Contract Claim*

█ The contract required the Bank's approval as follows:

(1) Purchaser hereby accepts the property subject to, but specifically not assuming, Sellers['] first mortgage loan with Key Bank in Cheyenne, Wyoming. This transaction is subject to Key Bank approval, which Seller hereby agrees to extend their best efforts to obtain.

The district court determined that the Bank's approval of the purchase was a condition precedent to the sale of the property. A condition precedent is "an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." *Sannerud v. Brantz,* 879 P.2d 341, 343 (Wyo.1994). It is undisputed that the Bank's approval "was an event which must have occurred before [the Joneses] had an obligation to effectuate" the sale. *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.,* 803 P.2d 366, 368 (Wyo.1990). However, the dispute between the parties concerns the financing terms found in the counter offer, which became part of the purchase contract:

*Paragraph 1* shall be changed to read as follows:

Purchaser agrees to buy the above described property upon the following terms and conditions and for the purchase price of *$700,000.00* payable as follows:

*$50,000.00* earnest money deposit and part payment, previously receipted for by broker, and:

*$650,000.00,* the remaining balance, which shall be paid as follows:

*$250,000.00* additional in cash or certified funds at closing. The then remaining balance of *$400,000.00* shall be paid according to terms of a Contract for Deed which shall call for (1) Purchaser's payment of, but specifically not Purchaser's assumption of, an existing Key Bank first loan on the property at time of closing (present Key Bank balance is approximately $303,000.00), and (2) Balance to be paid to Seller in equal annual installments reflecting a 15 year amortization and 9% interest per annum. First payment shall be due on the first anniversary date of closing with succeeding payments due on each and every anniversary date of closing until the fifth anniversary at which time all principal and any accrued interest shall be due and payable. No pre-payment of the Key Bank loan or amounts due Seller shall be allowed. The deed shall be placed in escrow; and; by virtue of this paragraph, any and all mention of delivery of deed at closing shall be changed to be struck from Attachment "A" hereto.

The Wynns contend that the Bank approved the sale and the Bank's insistence that it receive $100,000.00 from the Wynns or it would enforce its due on sale clause did not result in a material alteration to the contract. These contentions are simply without merit.

█ First, we agree with the district court's finding that there is "no basis upon which to suggest that the Wynn Defendants ever received Key Bank's approval for the transaction, the condition precedent that would require Jones to complete his payment under the contract." That finding is not "clearly erroneous," as the Wynns claim. Second, the unambiguous terms of the contract called for payments of approximately $303,000.00 to the Bank and the remainder to

the Wynns. The Wynns submitted these contract terms in their counter offer and, when the Joneses accepted the counter offer, they became part of the contract. We presume that a particular provision is placed in a contract for a purpose and strive to avoid a construction which renders a provision meaningless. *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 690 (Wyo.1996) (quoting *Moncrief v. Louisiana Land & Exploration Co.,* 861 P.2d 516, 524 (Wyo.1993)).

■ The contract also contained the following default provisions:

> 15. Time is of the essence hereof, and if any payment or any other condition hereof is not made, tendered or performed as herein provided, there shall be the following remedies: In the event that the Purchaser fails to make any payment or meet any other condition hereof, the parties hereto are mutually released from all obligations hereunder, and all payments made hereon shall be retained on behalf of the Seller as liquidated damages. **In the event that the Seller fails to perform any condition hereof as provided herein, then the Purchaser may, at his election, treat the contract as terminated, and all payments made hereunder shall be returned to the Purchaser;** PROVIDED, HOWEVER, that the Purchaser may, at his election, treat this contract as being in full force and effect with the right to compel specific performance of the Seller and to such consequential damages from the Seller resulting from Seller's failure to properly perform under this Agreement.

(Emphasis added.) The contract provided for a $50,000.00 earnest money deposit by the Joneses, to be held by Bill Saulcy, the broker. When the Wynns, as the sellers,

failed to obtain the Bank's approval, the Joneses properly treated the contract as terminated, and the $50,000.00 earnest money deposit should have been returned to them. The Joneses had no further obligation under the purchase contract. We affirm the district court's decision insofar as it rendered a judgment for the Joneses.[2]

### *Wyo. Stat. Ann. § 33–28–122*

The district court determined that Saulcy breached its fiduciary duty to the Joneses when it disbursed the earnest money deposit to the Wynns and awarded $50,000.00 plus post-judgment interest and allowable costs of the litigation. Saulcy argues the district court committed two errors of law when it held Saulcy liable for breach of fiduciary duty: first, that it misinterpreted Wyo. Stat. Ann. § 33–28–122(f); second, that it misinterpreted the contract, and the Joneses actually breached the contract. We decided the contract issue in the preceding section of this opinion, leaving only the statutory interpretation issue to resolve.

In its brief, Saulcy claims that Wyo. Stat. Ann. § 33–28–122(f) did not require Saulcy to retain the earnest money deposit for the benefit of the Joneses. The statute provides:

> (f) In the event of a dispute over the return or forfeiture of any deposit held by the listing broker, the listing broker may continue to hold the deposit in his trust account until he has a written release from the parties consenting to this disposition or until a civil action is filed, at which time it may be paid to the court.

Wyo. Stat. Ann. § 33–28–122(f) (Michie 1997). Saulcy contends that the term "may" in the statute signifies the acts are discretionary and that the statute merely permits,

2. We note that the district court determined that the failure of the condition precedent resulted in a breach of the contract by the Wynns. In *Frost Construction Co. v. Lobo, Inc.,* 951 P.2d 390, 397 (Wyo.1998), we stated:

> The assertion that the nonperformance of a condition precedent constitutes a breach of the agreement is incorrect.... A condition precedent should not be described as broken. [3A Arthur L. Corbin, Corbin on Contracts § 634 at 33 (1960).] "The condition merely does not exist or does not occur. If

> the condition consists of action by some person, it may properly be said not to be performed; but such non-performance is not a breach of contract unless he promised to render the performance—to perform the condition." *Id.*

Although the court's determination that the failure of the condition precedent was a breach of the contract was incorrect, we affirm the resulting judgment against the Wynns based on the default language in the contract.

but does not require, a realtor to retain a deposit in the event of a dispute.

This Court has recognized the unique nature of the real estate agent's relationship to third parties and has acknowledged that real estate agents may be held to a higher standard of care to purchasers. *Hagar v. Mobley,* 638 P.2d 127, 137 (Wyo.1981). In *Hagar,* that standard of care was found in the form of legislative enactment. *Id.* at 137. In *Mader v. James,* 546 P.2d 190, 194 (Wyo. 1976), we held that any payment of a deposit after the agent has notice of a dispute over the deposit is at the agent's own risk until the matter is settled. Wyo. Stat. Ann. § 33–28–122(f) provides a method for settling the matter.

We have said that "[t]he word 'may' in a statute will be construed to mean 'shall' whenever the rights of the public or of third persons depend upon the exercise of the power of the performance of the duty to which it refers...." *Board of County Commissioners v. State, ex rel. Miller,* 369 P.2d 537, 542 (Wyo.1962). The rights of the Joneses were dependent upon the proper exercise of Saulcy's statutory duty to hold the deposit until receiving "a written release from the parties consenting to this disposition or until a civil action is filed, at which time it may be paid to the court." Wyo. Stat. Ann. § 33–28–122(f) (Michie 1997). "It is contrary to reason to ascribe to a statute a meaning that will nullify its operation, if capable of any other interpretation." *Corkill,* 955 P.2d at 444 (quoting *DeHerrera v. Herrera,* 565 P.2d 479, 482 (Wyo.1977)). If we were to read the statute as Saulcy suggests, brokers could disburse deposits with impunity.

The district court held that the "language of the statute gives the listing broker discretion concerning the holding of a deposit **or** paying it to the court in conjunction with a civil suit.... [T]he language of the statute is discretionary only in relation to choosing between the two options listed in the statute and not whether the broker can choose to hold the deposit or just disburse it upon request of one party to the dispute." We agree. Saulcy clearly had notice that a dispute existed between the parties. After receiving notice of the dispute, Saulcy was required to either hold the deposit or pay it to the court. We affirm the district court's judgment against Saulcy.

## CONCLUSION

The Bank's approval was a condition precedent to the sale of the property between the parties. The contract called for the Wynns to seek that approval. The Bank never approved the sale. According to the terms of the contract, if the Wynns failed to meet one of the conditions of the contract, the earnest money deposit should have been returned to the Joneses. Saulcy improperly disbursed the deposit to the Wynns. We affirm the district court's judgment in favor of the Joneses against the Wynns and Saulcy.