2002 WY 166

**Dale E. CARROLL, dba Project Consultants, Appellant (Defendant),**

v.

**Thomas W. BERGEN, Appellee (Plaintiff).**

**No. 01–200.**

Supreme Court of Wyoming.

Nov. 15, 2002.

John D. Bowers of Bowers Law Office, P.C., Afton, Wyoming, Representing Appellant.

M. Kevin Voyles of Luthi & Voyles, Thayne, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Appellant Dale E. Carroll inspected a home Appellee Thomas W. Bergen was interested in buying and provided a report stating the house appeared to be "structurally sound." Mr. Bergen bought the property and thereafter sued Mr. Carroll alleging he

had relied on the report to purchase the house but later discovered additional repairs were necessary. After a bench trial, the trial court awarded Mr. Bergen a $14,954 judgment against Mr. Carroll, and this appeal followed. We reverse and remand for a new trial.

## ISSUES

[¶ 2] We rephrase the issues:

1. Did a valid contract exist?

2. Was Mr. Carroll's case unfairly prejudiced because Mr. Bergen was allowed to call a witness, not designated as an expert, to testify as a lay witness as to the industry standard for contracts and the need for repairs?

3. Was the damage award clearly erroneous because it was supported only by undesignated expert testimony?

## FACTS

[¶ 3] On or about March 4, 1998, Mr. Bergen, through his real estate agent, Mary Fahringer of Real Estate of Star Valley, made an offer to purchase a house in Alpine. The offer had a provision permitting the buyer to obtain "electrical, mechanical, structural, environmental and/or other inspections of the Property by qualified professional inspectors and/or engineers." The seller accepted the offer, and Mr. Bergen asked Ms. Fahringer to arrange a "home inspection." She contacted Mr. Radford, the inspector for the Town of Alpine, who had performed several inspections for her in the past. Because he was going out of town, he referred her to Mr. Carroll.

[¶ 4] Ms. Fahringer contacted Mr. Carroll and asked him to perform a "home inspection," which he agreed to do with the understanding he would be paid a fee and mileage. She did not specifically ask him to perform a "structural inspection," nor did she explicitly communicate the nature of the inspection she wanted beyond requesting a "home inspection."

[¶ 5] Ms. Fahringer was present for the roughly forty-five-minute home inspection

---

* Chief Justice at time of oral argument.

during which she and the seller advised Mr. Carroll of a broken window and a leak in the downstairs bathtub. Mr. Carroll prepared a handwritten report after the inspection in which he stated in part:

I am pleased to have done the inspection on the above referenced home. I found the home to be structurally sound.

.... Roof supports strong, 12″ log construction, caulked where necessary.

After reviewing the report, Ms. Fahringer called Mr. Carroll to advise him he had mistakenly indicated the house was built of solid log when it was actually constructed of structured insulated panels with log facing. Mr. Carroll rewrote the report so it was consistent with Ms. Fahringer's information and indicated only two problems with the house: a crack in the window in the northwest end of the home and a leak in the upstairs bathtub.[1] Thereafter, Mr. Carroll submitted an invoice for $46[2] that was never paid.

[¶ 6] Mr. Bergen never spoke to Mr. Carroll prior to the inspection and did not provide him with any instructions. Mr. Bergen received the home inspection report, completed the purchase, and moved into the house on approximately April 1, 1998. Upon taking possession, he began to notice problems which were not reflected in the inspection report such as a damaged deck board, a partially finished wall, gaps between the walls and the logs supporting the roof, a lack of insulation around window casings, a fireplace which did not draw properly, and a sagging floor.

[¶ 7] Robert Wagner of R & R Builders came to the house to build a dormer and noted additional problems. He determined the sag in the floor was caused by a lack of support which could be repaired by placing a concrete pier and a post in the crawl space. He also concluded there were problems with some of the girders and the porch was built with wood intended for interior, not exterior, use. In October of 1999, Mr. Wagner estimated the total cost of all the "repairs," without any itemization, would not exceed $15,000. At trial in June of 2001, he testified, allegedly as a lay witness, over Mr.

Carroll's continuing objection that his testimony should be precluded because he was not designated as an expert witness pursuant to the prehearing scheduling order. Mr. Wagner testified the same repairs in 2001 would likely cost $17,000 due to increased material, labor, and overhead expenses. In answer to questions posed by the court, he also testified the Uniform Building Code (UBC) was the standard for most contracts and construction in the building industry.

[¶ 8] The other trial witnesses were the real estate agent, Mr. Bergen, and Mr. Carroll. The court found a contract existed and awarded Mr. Bergen judgment against Mr. Carroll for $14,954 ($15,000 less the $46 unpaid inspection fee) plus $45 in court costs. Mr. Carroll appealed contending the trial court erred in finding there was a valid contract; and, alternatively, if there was a contract, Mr. Carroll did not breach it; or, if a valid contract was breached, no damages were proved.

## STANDARD OF REVIEW

[¶ 9] Our standard of review when a trial is held before the bench is well established:

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law *de novo* on appeal.

*Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1175–76 (Wyo.1997)

---

1. The only problems Mr. Carroll noted were those he was told about by the real estate agent and the seller. However, he mistakenly identified the wrong bathtub.

2. The fee included $40 for the inspection cost and $6 for mileage.

(citations omitted); *see also Saulcy Land Company v. Jones,* 983 P.2d 1200, 1203 (Wyo.1999).

## DISCUSSION

[¶ 10] "Whether an oral contract exists is a question of fact to be determined by the trier of fact." *Williams v. Dietz,* 999 P.2d 642, 644 (Wyo.2000). The trial court found: "Plaintiff, through his real estate agent, contracted with Defendant to perform a home inspection on a home that Plaintiff was buying." Mr. Carroll argues there was no valid contract because (1) the real estate agent made all the arrangements with him but was not authorized to enter into outside contracts on Mr. Bergen's behalf, (2) there was no consideration because no payment was ever made for the "home inspection," and (3) there was no mutual assent to the contract terms.

[¶ 11] The record demonstrates Mr. Bergen and Ms. Fahringer, for Real Estate of Star Valley, entered into an Exclusive Right-to-Buy Contract which provided in part that the real estate office/broker and agent would act to locate and secure property to meet the buyer's needs. The contract expressly dealt with the broker/agent's authority to obtain services from outside sources.[3] This court has said:

> Actual authority may be express or implied. An agent has express actual authority to bind the principal when the principal, orally or in writing, specifically grants the agent the power to bind the principal. Implied actual authority is established by the course of dealings between the parties and the circumstances surrounding the case.

*Cargill, Incorporated v. Mountain Cement Company,* 891 P.2d 57, 62 (Wyo.1995) (citations omitted). It is reasonable to infer the broker/agent had authority to obtain outside services. If such services were not obtained consistent with the contract's terms, it is possible the buyer would have a claim against the broker/agent. However, there is no dispute between Mr. Bergen and the broker/agent regarding the manner in which Mr.

Carroll's services were secured. Therefore, this argument fails because Ms. Fahringer had authority to secure the home inspection that Mr. Bergen requested.

[¶ 12] Mr. Carroll promised to inspect and, as Mr. Bergen's agent, Ms. Fahringer promised payment of his fee and mileage. Mr. Carroll asserts this exchange of promises did not constitute sufficient consideration for a valid contract because his $46 fee was not paid. We must disagree. For a contract to be valid, "[t]here must be an offer and acceptance along with bargained for and exchanged valuable consideration. Valuable consideration in this context may consist of [an] exchange of mutual promises, which promises impose a legal liability upon each promisor." *Kerper v. Kerper,* 780 P.2d 923, 932 (Wyo.1989) (citation omitted). Consideration is described in the Restatement (Second) of Contracts:

> (1) To constitute consideration, a performance or a return promise must be bargained for.
>
> (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.
>
> (3) The performance may consist of
>
> (a) an act other than a promise, or
>
> (b) a forbearance, or
>
> (c) the creation, modification, or destruction of a legal relation.
>
> (4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

1 Restatement (Second) of Contracts § 71 at 172 (1981). The promise to pay for the inspection and mileage constitutes valuable consideration. Mr. Bergen's failure to pay the fee was a breach of his promise to pay and, consequently, an actionable breach of the contract. The subsequent breach notwithstanding, the mutual exchange of prom-

---

**3.**
> VI. Costs of Services or Products Obtained From Outside Sources.
> Broker will not obtain or order products or services from outside sources unless Buyer has

previously authorized the services in writing and has agreed to pay for those services promptly when due. (Examples: surveys, soil tests, radon tests, title reports, property inspections.)

ises was sufficient consideration to support a valid contract.

[¶ 13] Mr. Carroll's inspection report that the home was "structurally sound" is proof of his belief a contract existed. "A contract comes into being when there is a meeting of the minds concerning the terms of the agreement. The existence of a contract depends upon the intent of the parties and presents the trial court with a question of fact." *Anderson Excavating and Wrecking Company v. Certified Welding Corporation,* 769 P.2d 887, 889 (Wyo.1988) (citation omitted); *see also Raymond v. Steen,* 882 P.2d 852, 856 (Wyo.1994).

" '[O]n appeal, the Supreme Court assumes that evidence in favor of the successful party is true, leaves out of consideration entirely the conflicting evidence presented by the unsuccessful party, and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence.' " *McCormick v. McCormick,* 926 P.2d 360, 362 (Wyo.1996) (quoting *Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 775 (Wyo.1988)). The party who alleges that a contract exists bears the burden of proving the terms of that ·contract.

... It is well established that courts do not have the power to supply indefinite terms.

*Williams,* 999 P.2d at 644–45 (citation omitted).

[¶ 14] The problem in this case is the dispute over the terms of the contract. Only Mr. Carroll and Ms. Fahringer communicated about the inspection. Mr. Bergen never spoke with Mr. Carroll. Ms. Fahringer testified:

Q. Did Mr. Bergen ask you to obtain a home inspection?

A. Yes, he did. He was—we have dates filled in and times on that contract that an inspector was coming in to inspect.

Q. And what did he ask you to do?

A. He asked me to contact one.

Q. To perform a home inspection?

A. To perform the home inspection. And I called Mr. Radford.

Q. Did he give you any reason why he wanted a home inspection?

A. Probably because he is not an inspector or he's not a structural engineer or he doesn't know, never built a house, probably.

Q. Did he tell you that he lacked expertise on house construction?

A. Yes, he did.

Q. So following up on Mr. Bergen's request, what did you proceed to do?

A. I called Mr. Radford, who was the town inspector for the Town of Alpine.... And he referred ... me to Mr. Carroll.

. . . .

Q. So you proceeded to contact Mr. Carroll?

A. Correct.

Q. What did you ask Mr. Carroll to do?

A. To do a home—asked him to do a home inspection as—Because I didn't know Mr. Carroll, I did have to relay (sic) back to Mr. Radford, giving me his name, that he would do an inspection for me because I usually get Mr. Radford and he was going to be out of town.

Q. Do you recall the conversation?

A. Not much of it. Just that I would meet him or I would give him a key. Now, we usually give them keys or we meet them and take them to the place where it is, if they don't know where the area is.

THE COURT: Did she ask—the key question here is was there—did you tell him that you wanted a structural inspection?

THE WITNESS: We asked for an inspection. And if they'd been working with any realtors, they know what kind of inspection Mr. Radford does.

THE COURT: What kind is that?

THE WITNESS: *That is a structural inspection of the house* so that the person who is buying it feels comfortable purchasing it.

(Emphasis added.) Ms. Fahringer acknowledged she did not discuss what should have been included in the inspection because Mr.

Radford had said Mr. Carroll could do the inspection and, from this information, she concluded Mr. Carroll would already be aware of what was expected of him. Mr. Radford did not testify regarding what a home inspection should entail in his experience.

[¶ 15] The record is clear that Mr. Carroll had some experience in the building trades and went with Mr. Radford on four inspections. Without any instructions from Ms. Fahringer, Mr. Carroll stated in his report that he found the home to be "structurally sound." This choice of words is a strong indication he, like Ms. Fahringer, understood the inspection was intended to review and report on the structural soundness of the home. We conclude a contract existed because the parties implicitly and mutually agreed a home inspection was to be completed which would report on the structural soundness of the house.

[¶ 16] Mr. Wagner, the building contractor, provided the only testimony relating to an industry standard for home inspections and construction. Two problems exist with his testimony. First, he provided expert testimony which had not been designated as such. Second, not even Mr. Wagner offered an opinion that the repairs he suggested were needed to achieve "structural soundness."

[¶ 17] Mr. Carroll asserts his case was unfairly prejudiced because, despite a pretrial order requiring designation of expert witnesses and his continuing objection to Mr. Wagner's testimony without such a designation, the trial court permitted the testimony to include the industry standard applied in most building contracts, the condition of the house, and damages.

[¶ 18] A pretrial order required both parties to designate expert witnesses by November 17, 2000. On June 4, 2001, Mr. Carroll filed a motion in limine objecting to any expert witness other than Ms. Betty Rogers, the only expert designated prior to trial. The motion specifically complained Mr. Carroll could not depose unidentified experts or request a *Daubert*[4] hearing on the admissibility of their testimony.[5] A hearing on this motion was held immediately prior to the trial on June 4, 2001, and the trial court ruled Mr. Bergen could call Mr. Wagner only as a lay witness and noted Mr. Carroll's continuing objection.

[¶ 19] "We have stated that a trial court has discretion to waive the requirements contained in its pretrial orders. We will not overturn the trial court's ruling excusing a failure to observe its pretrial order unless there has been an abuse of discretion." *Contreras By and Through Contreras v. Carbon County School District # 1*, 843 P.2d 589, 592 (Wyo.1992) (citations omitted). Similarly, admission of evidence is within the trial court's sound discretion, and we will not disturb evidentiary rulings absent a clear abuse of discretion. *Garnick v. Teton County School District No. 1*, 2002 WY 18, ¶ 13, 39 P.3d 1034, ¶ 13 (Wyo.2002).

[¶ 20] However, it is also true that adherence to such orders is critical in maintaining the integrity of judicial proceedings. *1488, Inc. v. Philsec Investment Corp.*, 939 F.2d 1281, 1289 (5th Cir.1991); *Reaves v. Bergsrud*, 127 N.M. 446, 982 P.2d 497, 502 (App.1999). The pretrial order controls the issues to be litigated, allowing the parties to rely on the pretrial order exhibit and witness lists to prepare their cases, and the trial court is vested with extensive authority to enforce its pretrial order. *Id.*

[¶ 21] W.R.E. 701, entitled "Opinion Testimony by Lay Witnesses," provides:

---

4. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

5.

"Under the *Daubert* model, the trial court must first determine whether the expert's methodology is reliable; then the court must determine whether the proposed testimony 'fits' the facts of the particular case." [*Chapman v. State*, 2001 WY 25, ¶ 8, 18 P.3d 1164, ¶ 8 (Wyo.

2001)]. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court further clarified the scope of *Daubert*, holding the gatekeeping duties of the trial judge apply to all expert testimony, whether such testimony is based on scientific, technical, or other specialized knowledge.
*Alexander v. Meduna*, 2002 WY 83, ¶ 21, 47 P.3d 206, ¶ 21 (Wyo.2002).

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

We previously held that W.R.E. 701 cannot be read to allow a witness who fails to qualify as an expert to offer opinion testimony " 'where the subject in question lies outside the realm of common experience and requires special skill or knowledge.' " *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1190 (Wyo.1992) (quoting 3 David W. Louisell & Christopher B. Mueller, Federal Evidence § 376 at 419 (Supp.1992)). "Topics demanding special experience, such as the appropriate mechanical design for an atypical heating and air conditioning system, require that only the testimony of a person possessing that special experience be received." *Id.*

[¶ 22] A review of the testimony to which Mr. Carroll objected leads to the inescapable conclusion that the witness was allowed to provide opinions outside the realm of common experience. He testified he was a building contractor with twenty-four years of experience and had observed the condition of Mr. Bergen's house. He then gave his opinion as to why the floor sagged using technical terms such as point loads, girder widths, and floor joists and concluded the home did not conform with the UBC. Mr. Wagner also provided his opinion of what repairs were necessary, how they should be made, and what they would cost. The average lay person would not have the knowledge or experience to give such opinions. Borrowing the expression, "if it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck," we conclude Mr. Wagner's testimony was essentially an expert opinion from an experienced builder. In addition, his opinion that the UBC was the standard "most contracts use" suggested the home inspection contract required Mr. Carroll to identify deviations from the UBC.

[¶ 23] Without other evidence establishing the minimum requirements of a structural soundness inspection or that Mr. Carroll failed to meet the requirements, the trial court must have relied on Mr. Wagner's testimony to conclude Mr. Carroll breached the contract by performing the inspection incompetently. No evidence was introduced to prove the sagging floor or other identified conditions actually impacted the structural soundness of Mr. Bergen's home. Mr. Wagner's testimony regarding the UBC inferred as much, but there was no direct evidence that compliance with the UBC was equivalent to structural soundness or the parties contemplated deviations from the UBC would be included in an inspection for structural soundness.

[¶ 24] "Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained." *Drake v. McCulloh*, 2002 WY 50, ¶ 17, 43 P.3d 578, ¶ 17 (Wyo.2002). We cannot sustain the trial court's finding that Mr. Carroll did not do a competent job of inspecting the home without admissible evidence of the standard the parties intended should apply to such an inspection.

[¶ 25] Mr. Wagner's testimony unfairly prejudiced Mr. Carroll's case because Mr. Carroll had no notice or opportunity to investigate the opinion in advance and counter with his own expert. Holding otherwise would suggest litigants must be prepared to counter undesignated experts because they may be allowed to testify as lay witnesses. Cases should proceed in an orderly manner without parties having to anticipate ambush. The error was harmful because, without Mr. Wagner's testimony, there is a reasonable possibility the trial court's decision would have been more favorable to Mr. Carroll. *McCarthy v. Whitlock Construction and Supply*, 715 P.2d 218, 221 (Wyo.1986).

[¶ 26] Mr. Carroll similarly contends the award of damages was clearly erroneous because the trial court relied on Mr. Wagner's testimony and lacked any other supporting evidence.

Damages are findings of ultimate fact. In a jury trial, the "jury's determination of the amount of damages is inviolate absent an award so excessive or inadequate as to shock the judicial conscience and to raise

an irresistible inference that passion, prejudice, or other improper cause had invaded the trial." *Coulthard v. Cossairt,* 803 P.2d 86, 92 (Wyo.1990). But the standard of review after a bench trial is less deferential. "Damages, like apportionment of fault, are reviewed as fact and are not reversed unless clearly erroneous." S. Childress, A Standards of Review Primer: Federal Civil Appeals, 125 F.R.D. 319, 330 (1989).

*Cross v. Berg Lumber Company,* 7 P.3d 922, 928 (Wyo.2000). We agree with Mr. Carroll. Mr. Wagner's undesignated expert testimony which established the standard for determining what repairs were necessary and the cost of making those repairs should not have been allowed. Mr. Bergen presented no other evidence of damages.

[¶ 27] Reversed and remanded for a new trial consistent with this opinion.

KITE, J., delivered the opinion of the Court; GOLDEN, J., filed a dissenting opinion in which HILL, C.J., joined.

GOLDEN, J., dissenting, in which HILL, C.J., joins.

[¶ 28] I agree with everything said in the Court's opinion, except that which remands this case for a new trial. Absent Mr. Wagner's erroneously admitted testimony, Mr. Bergen's claim fails. Simply stated, Mr. Bergen has failed to prove his claim; consequently, this Court should reverse and remand with directions that the district court enter judgment for Mr. Carroll, so that this case is at an end. I see no reason to give Mr. Bergen another bite at the apple.