78 P.3d 1032 (2003)
2003 WY 141
In the Interest of SNK, a minor child.
Northern Arapaho Tribe, Appellant (Intervenor),
v.
The State of Wyoming, Department of Family Services, Appellee (Petitioner).
No. C-03-5.
Supreme Court of Wyoming.
November 4, 2003.
*1033 Representing Appellant: Andrew Baldwin and Christopher J. Schneider of Baldwin & Crocker, P.C., Lander, WY. Argument by Mr. Schneider.
Representing Appellee: Patrick J. Crank, Attorney General; Michael L. Hubbard, Deputy Attorney General; Dan S. Wilde, Senior Assistant Attorney General; and Sandra Siel Kitchen, of Copenhaver, Kath & Kitchen, LLC, Powell, WY as Guardian ad Litem for SNK. Argument by Mr. Wilde.
Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.
LEHMAN, Justice.
[¶ 1] Appellant, the Northern Arapaho Tribe (Tribe), seeks review of the district court's order continuing the placement of the minor child involved in this case, SNK, in a non-Indian foster home. Essentially, the Tribe argues that the district court in rendering its decision improperly determined that the "existing Indian family" exception to the Indian Child Welfare Act (ICWA) applied. After our review, we hold that the issues presented are moot.

ISSUES
[¶ 2] The Tribe raises the following issues on appeal:
1. Did the district court err in holding that [ICWA] was not applicable to this case?
2. Did the district court provide proper notice to all parties?
3. Did the district court comply with the Due Process requirements of the Wyoming State Constitution?
4. Did the district court comply with the Due Process requirements of the United States Constitution?
Appellee, State of Wyoming, Department of Family Services (State), phrases the issues on appeal as:
I. Whether an order from a 12 month review hearing issued in a juvenile proceeding that has not progressed to an adjudicatory hearing is a final order for purposes of an appeal.
II. Whether the juvenile court's statement that [ICWA] was not applicable equates to the adoption of the "existing Indian family exception" to [ICWA].
III. Whether the juvenile court's statement that [ICWA] is not applicable to this matter presents a justiciable controversy for the court to adopt or reject the "existing Indian family exception."

FACTS
[¶ 3] SNK is an enrolled member of the Tribe as is her biological father. However, SNK's biological mother and ex-stepfather are non-Indian. SNK's biological parents were never married. Nevertheless, SNK lived with her biological mother and biological father for four months during the first year of her life. SNK has had very limited contact with her biological father since that *1034 time. SNK's biological mother and her ex-stepfather were married in 1994, and SNK resided with both of them or either of them, individually, for most of her life.[1] SNK's biological mother and ex-stepfather were divorced in 2001; but SNK, her biological mother, and her ex-stepfather still maintain very close relationships. SNK also has three stepsiblings by virtue of the union between her biological mother and her ex-stepfather. SNK has resided with these stepsiblings for a substantial period of her life, and has a close relationship with each of them.
[¶ 4] In March of 2001, the State filed a juvenile neglect proceeding against SNK's biological mother. At the time the State did not know the whereabouts of either SNK's biological mother or biological father. The district court, therefore, ordered legal and physical custody to SNK's ex-stepfather under the supervision of the State. In August of 2001, the district court learned that SNK was living with her biological mother in Baker, Montana. Following this discovery, the district court found that SNK's ex-stepfather had violated its order and that continued placement of SNK in his home would not be in her best interests and thus placed SNK in a foster home.
[¶ 5] In February 2002 the Tribe was allowed to intervene in the action. Upon its intervention, the Tribe did not question the jurisdiction of the district court or file a motion to remove this matter to a different tribunal. Rather, the Tribe has participated as a party, including participation in the multi-disciplinary team (MDT) meetings.
[¶ 6] On October 17, 2002, the district court held a twelve-month review hearing. At this hearing the district court took evidence and heard testimony from various individuals, including SNK's mental counselor. Argument was also presented that the "existing Indian family" exception to ICWA applied. Near the conclusion of this hearing, the district court stated:
Okay. And I will go ahead and enter the order at this point, having considered all of the testimony presented and the arguments and the legal authorities cited. This Court also has considerable familiarity with the Indian Child Welfare Act. And the Court will find that, first of all, the Indian Child Welfare Act is not applicable in this instance for the reasons cited and the cases cited and the law cited by [the appointed guardian ad litem for SNK] and by [counsel for the biological mother of SNK].
The Court will find that it is in the best interests of the child that she remain in the present placement until further order of the Court, and will make the necessary findings for the 12-month review as required by law.
The Court will still consider the primary goal, until further order of the Court, to be reconciliation with the mother, in whose custody she was in before all of this started, and, as an alternative to that, will consider placement in the home of [the ex-stepfather].
...
... We don't have the home study yet, and of course we don't know what that's going to say; we haven't seen it yet. But we do know that this child has said that sheher first choice was to live with her mother. She would also like to be with her siblings. And the Court does have some concern, in the event that the home study on [the ex-stepfather] isdoes not indicate the viability of a placement there, and not knowing how long the mother may continue to be incarcerated or unavailable or whether she'll be ready to take custody upon her release, I think that it also is necessary that the court order a home study of the home on the reservation that was mentioned by Mr. Trosper.[[2]]
The district court entered its written order on December 9, 2002, finding "that the Indian Welfare Act (ICWA) is not applicable in *1035 this matter." The Tribe, having unsuccessfully moved for reconsideration, now appeals.
[¶ 7] Subsequent to the filing of appeal, the district court held a hearing on February 4, 2003, and ruled that SNK should be placed in the home of her ex-stepfather until further "permanency" proceedings could be held. All parties to this action, including the Tribe, agreed with SNK's temporary placement as ordered. The Tribe, however, continues to object to any aspect of the proceedings that fail to apply the provisions of ICWA.[3]

STANDARD OF REVIEW
[¶ 8] In Ekberg v. Sharp, 2003 WY 123, ¶ 10, 76 P.3d 1250, ¶ 10 (Wyo.2003) (citing Carroll v. Bergen, 2002 WY 166, ¶ 9, 57 P.3d 1209, ¶ 9 (Wyo.2002) and Springer v. Blue Cross & Blue Shield of Wyoming, 944 P.2d 1173, 1175-76 (Wyo.1997)), we stated:
The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law de novo on appeal.

DISCUSSION

Appealable Order
[¶ 9] Initially the State contends the district court's order is not an appealable order and that the Tribe cannot only appeal the district court's ruling on ICWA. The Tribe counters by arguing that the district court's ruling effectively denies it the right to intervene in the case, thereby depriving the Tribe of its federally recognized interest in protecting the best interests of its children, Indian culture, and way of life. The Tribe also asserts that pursuant to W.R.A.P. 1.05, the district court's order must be considered an appealable order because it affected a substantial right of the Tribe and, in effect, determined this action.[4]
[¶ 10] We do not find the Tribe's argument that it has been effectively denied an opportunity to participate as an intervening party by virtue of the district court's order persuasive. As indicated earlier, the Tribe was allowed to intervene in this action as specifically provided for by ICWA. 25 U.S.C. § 1911(c). Since being allowed to intervene, the Tribe has actively participated as a party, making appearances at hearings and at MDT meetings. Indeed, when asked by the district court at the review hearing held subsequent to the appeal in this case if the Tribe desired to continue as a party in the action, the Tribe indicated through its attorney that it certainly desired to participate as a party and the Tribe was allowed to do so. Furthermore, the Tribe has not contested the jurisdiction and authority of the district court and has not attempted to remove this action to a different tribunal. See 25 U.S.C. § 1911(b). The Tribe received due process when it was notified of the twelve-month review hearing and was allowed to participate in that hearing.
[¶ 11] However, we hold that the district court's order ruling that ICWA was not applicable in this case does sufficiently affect a substantial right of the Tribe pursuant to W.R.A.P. 1.05(b). The very purpose for Congress' enactment of ICWA was to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families. 25 U.S.C. § 1902. *1036 Congress, when enacting ICWA, expressly found that there is no resource that is more vital to the existence and integrity of Indian tribes than their children, that States have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families, and that the protection and preservation of Indian Tribes and their resources is of utmost importance. 25 U.S.C. § 1901. Hence, the district court's determination that ICWA did not apply critically affected the Tribe's right to effectuate the aforementioned substantial goal of ICWA. This court has previously held that proceedings under the Juvenile Court Act are "special proceedings." State in Interest of C, 638 P.2d 165, 168 (Wyo.1981).
[¶ 12] As pointed out by the Tribe, this court alternatively has the power of certiorari and the discretion to consider a notice of appeal as a petition for a writ of certiorari even if the order being appealed is not final. In re General Adjudication of All Rights to Use Water in Big Horn River System, 803 P.2d 61, 67-68 (Wyo.1990). Review pursuant to certiorari should be granted when the timely resolution of matters coming to our attention is of extreme and lasting importance to the citizens of this State and may contribute to judicial efficiency. Id. As indicated previously, the applicability of ICWA is of extreme importance to the Tribe and to its members as citizens of Wyoming, including most importantly the child and other individuals directly involved in this action. Accordingly, we hold that the order issued by the district court concerning the twelve-month review hearing is an appealable order.

Justiciability
[¶ 13] The State argues that, because a factual hearing has not been held in this action, there is no factual basis for this court to review and thus take the steps to accept or reject the "existing Indian family" exception to ICWA.[5] Therefore, the State asserts no justiciable controversy exists for this court to review. The Tribe replies that it is apparent that the basis of the district court's ruling was that the "existing Indian family" exception applied because the district court adopted the exception's reasoning as support for its ruling. The Tribe further argues that this case does present an actual justiciable controversy and that the Tribe is entitled to redress for injury to its federally protected rights. The Tribe finally asserts that the State and SNK's appointed guardian ad litem should not be allowed to advocate and obtain a ruling at the district court level based upon the "existing Indian family" exception but then prevent appellate review simply by asserting that they no longer wish to maintain that argument.
[¶ 14] In Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co., 978 P.2d 1138, 1142 (Wyo.1999), we recognized that a justiciable controversy must exist before a court may grant relief. Citing Reiman Corp. v. City of Cheyenne, 838 P.2d 1182, 1186 (Wyo.1992), this court further enunciated that a justiciable controversy is "defined generically as a controversy fit for judicial resolution." To establish a justiciable controversy:
1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.
2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy *1037 to engender a thorough research and analysis of the major issues.
Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co., at 1142.
[¶ 15] For the same reasons stated above, we conclude that the Tribe has an obvious existing and real continuing interest in this case, namely, the protection of the best interests of Indian children; the promotion of the stability and security of Indian tribes and families to ensure the existence and integrity of Indian tribes; and the continuation of the cultural and social standards prevailing in Indian communities and families. Similarly, the order at issue squarely affects such interests, and the Tribe has clearly entered this foray as a genuine adversary so as to ensure that the Tribe will advance its position with vigor.
[¶ 16] Nevertheless, in argument espoused at oral argument before this court, the State infers that this matter must be considered moot because, after entry of the district court's order concerning the twelve-month review hearing, the district court entered another order on February 28, 2003, temporarily placing SNK in the home of her ex-stepfather until further "permanency" proceedings could be held in this action.[6] Thus, the State argues that any holding concerning the district court's twelve-month review hearing would be of absolutely no significance.[7]
[¶ 17] This court has often recognized:
Under the umbrella of the justiciable controversy concept stand "the political question[s] doctrine, the administrative questions doctrine, the advisory opinions doctrine, the feigned and collusive cases doctrine, the doctrine of standing, the doctrine of ripeness, and the doctrine of mootness." Reiman, 838 P.2d at 1186. "These doctrines are premised upon jurisprudential principles which are designed to promote judicial economy and the wise exercise of judicial power." Id.

...
In this case, Appellants' initial challenge to the jurisdiction of the district court arises under the doctrine of mootness.
The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright & Miller § 3533.

Reiman, 838 P.2d at 1187 (citations omitted).
Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co., at 1142-43.
[¶ 18] We have also stated on a number of occasions:
Our general law on justiciability provides that courts should not consider issues which have become moot. Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Comm'n, 693 P.2d 227, 233 (Wyo.1985). We do not decide cases when a decision will have no effect or pertains only to matters that might arise in the future. McLain v. Anderson, 933 P.2d 468, 472 (Wyo.1997). A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy. Id. Therefore, if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it. Id.; see also Rocky Mountain Helicopters, Inc. v. Air Freight, Inc., 773 P.2d 911, 924-25 (Wyo. 1989).

*1038 In Sanchez v. State, 982 P.2d 149, 150 (Wyo.1999), we further elaborated that a case is moot when the matter upon which a determination is sought presents no actual controversy or when a decision can have no practical effect. We have also recognized the general rule that the issue of mootness constitutes a question of law and may be properly addressed by a court sua sponte. Cooper v. Town of Pinedale, 1 P.3d 1197, 1201 (Wyo.2000) (citing, in part, Fund for Animals v. Babbitt, 89 F.3d 128, 132 (2nd Cir.1996)); see also Northern Utilities, Inc. v. Public Service Comm'n, 617 P.2d 1079, 1085 (Wyo.1980).
Wyoming Bd. of Outfitters & Prof'l Guides v. Clark, 2002 WY 24, ¶ 9, 39 P.3d 1106, ¶ 9 (Wyo.2002) (quoting Smith Keller & Assocs. v. Dorr, 4 P.3d 872, 876 (Wyo.2000)).
[¶ 19] Any determination by this court relating to the basis upon which the district court continued to place SNK in the non-Indian foster home as of October 17, 2002, by virtue of its order at the twelve-month review hearing is moot in that it would be wholly ineffectual and of no practical effect. The district court has now temporarily placed SNK in the home of her ex-stepfather. Indeed, if this court were to rule that the district court should not have placed SNK in the non-Indian foster home in October of 2002, this determination would be inconsequential and of no practical value as another temporary placement of SNK was later effectuated. In fact, SNK's last temporary placement does not appear to be based on reasons related to ICWA and was not contested by any party, including the Tribe.
[¶ 20] Further, we recognize that the parties are at odds as to the actual basis utilized by the district court in its ruling that ICWA does not apply to this case, i.e., either through application of the "existing Indian family" exception or otherwise. Our review of both statements made by the district court during the twelve-month review hearing and the district court's written order concerning that hearing is of little assistance in determining the basis of the district court's ultimate ruling. Review of the record on appeal leaves this court with an indication that the district court's statements during the hearing may be characterized as obiter dictum.
[¶ 21] This conclusion is particularly supported by the fact that the district court heard from a qualified expert on the suggested temporary placement options for SNK and the surrounding circumstances, including the preference expressed by SNK's biological mother. The district court ordered a "home-study" of SNK's ex-stepfather's home as well as the Indian foster home suggested by the Tribe. In addition, the district court's statements during the twelve-month review hearing are less than clear especially considering that the district court did not include in its related written order the specific reason for its determination that ICWA did not apply. Finally, it again should be noted that at the February 4, 2003 review hearing, some months after the twelve-month review hearing, the Tribe indicated when asked that it continued to desire to participate as a party. The only means by which the Tribe could have been allowed to participate as a party in this action is through the applicability of ICWA. Accordingly, while the district court previously ruled that ICWA did not apply, it apparently overruled that determination by later allowing the Tribe to participate as a party.
[¶ 22] Therefore, we conclude that the issue in this case regarding the applicability of ICWA and the "existing Indian family" exception to ICWA is moot. While we recognize that the applicability of the "existing Indian family" exception to ICWA in Wyoming is an important issue that needs to be addressed, we simply do not believe that, under the circumstances presented by this case, it is appropriate for this court to make such a determination at this time.
[¶ 23] Accordingly, although we hold that the order from which the Tribe appeals is an appealable order, the issues presented by the Tribe are moot. This court has clearly established that it will not make determinations which may be characterized as advisory, and this court will not digress from such a position unless extreme circumstances demand.
"Although the question as postulated in this case may be properly before us in the *1039 future, to render an opinion here would be to issue an advisory opinion. This Court has said repeatedly that it will not issue advisory opinions, and we decline to do so now." State Bd. of Equalization v. Jackson Hole Ski Corp., 745 P.2d 58, 59 (Wyo. 1987) (citing Graham v. Wyoming Peace Officer Standards and Training Com'n, 737 P.2d 1060 (Wyo.1987)); see also Willowbrook Ranch, Inc. v. Nugget Exploration, Inc., 896 P.2d 769, 772 (Wyo.1995).
State Dep't of Rev. v. Amoco Prod. Co., 7 P.3d 35, 41 (Wyo.2000).

CONCLUSION
[¶ 24] For those reasons given, we hold the issues presented to this court are moot and not reviewable on appeal. Board of County Comm'rs for Sublette County v. Exxon Mobil Corp., 2002 WY 151, ¶ 18, 55 P.3d 714, ¶ 18 (Wyo.2002).
GOLDEN, J., dissenting.
[¶ 25] I respectfully dissent. The issue is not, as the majority opinion suggests, a challenge to a specific placement order. The issue is what law applies to the underlying juvenile court proceedings. This is an important question that is appealable, justiciable, and cannot possibly become moot because the answer to the question affects almost every aspect of the juvenile court proceeding.
[¶ 26] The specific issue is whether the ICWA applies to this case. The ICWA is not something of limited application. The ICWA provides a myriad of substantive and procedural safeguards that must be met in addition to state law standards. Orders that do not comply with the requirements of the ICWA face the possibility of being declared void. 25 U.S.C. § 1914. Because the dictates of the ICWA potentially affect the very nature and course of proceedings, the determination of its application can never be considered moot.[1]
[¶ 27] Because of the mandatory requirements of the ICWA, it is critical to determine as early as possible whether the ICWA applies to a proceeding. In this case, it is an easy determination to make. The child who is the subject of this proceeding is an enrolled member of the Northern Arapaho Tribe. She is subject to involuntary foster care. The ICWA applies. 25 U.S.C. § 1903(1)(i); 25 U.S.C. § 1912.
[¶ 28] While it may not have been as clearly presented as this Court might have hoped, there is only one possible reason the trial court could have determined that the ICWA did not apply. It was argued that the ICWA did not apply because of the "existing Indian family" exception that has been judicially created in some states. The "existing Indian family" doctrine, which has not been addressed or adopted by the Wyoming courts, precludes application of the ICWA when the Indian child's parent or parents have not maintained a significant social, cultural, or political relationship with his or her tribe. See State in Interest of D.A.C., 933 P.2d 993 (Utah App.1997); In re Bridget R., 41 Cal.App.4th 1483, 49 Cal.Rptr.2d 507 (Cal. App.1996). Since this judicially created exception was first introduced in the case of In re Adoption of Baby Boy L., 231 Kan. 199, 643 P.2d 168 (1982), it has been widely criticized. See State in Interest of D.A.C., 933 P.2d 993 (Utah App.1997) (collecting cases). There is currently pending in the United States House of Representatives a bill, H.R. 2750, that would clarify that the ICWA applies to all Indian children, regardless of whether an Indian child has been part of an Indian family or has maintained a social or cultural relationship with an Indian tribe.
[¶ 29] I would hold that, as a matter of law, the "existing Indian family" exception defies that clear language and intent of the ICWA, which includes promoting the stability and security of Indian tribes and protecting the unique Indian culture. 25 U.S.C. *1040 § 1902. Wyoming should not recognize the judicially created "existing Indian family" exception. Because, as a matter of law, the "existing Indian family" exception is not recognized in Wyoming, no factual question exists as to whether the exception applies in this specific case. SNK is an Indian child as defined by the ICWA and the ICWA applies to this case. I would remand this case to the juvenile court for further proceedings consistent with the mandates of ICWA. This would include conducting a new placement hearing, taking into account the factors required by the ICWA. 25 U.S.C. § 1915.
NOTES
[1] At the date of filing this appeal in 2002, SNK was ten years old.
[2] On behalf of the Tribe, Mr. Trosper suggested at the twelve-month review hearing that the district court consider placing SNK in the home of a great-aunt on her biological father's side of the family who lived on an Indian reservation near Riverton.
[3] Upon motion to modify the record on appeal by the State, this court ordered the modification of the record to include the order of the district court entered on February 28, 2003, placing SNK in the home of her ex-stepfather.
[4] W.R.A.P. 1.05 provides, in applicable part:

An appealable order is:
(a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment; or
(b) An order affecting a substantial right made in a special proceeding[.]
[5] Some state courts have held that ICWA does not apply to an Indian child raised by a non-Indian parent with no tribal contact. Such reasoning is referred to as the "existing Indian family" exception.
[6] Again, all parties, including the Tribe, agreed with SNK's temporary placement in her ex-stepfather's home as ordered.
[7] After all appellate briefs were filed with this court the State moved this court for supplementation of the record on appeal to include the transcript and order regarding the review hearing held by the district court on February 4, 2003. This motion was granted.
[1] I strongly disagree with the assumption made in the majority opinion that, since the juvenile court gave the Tribe the opportunity to remain in the case as a party, the juvenile court must have changed its mind and decided the ICWA applies. A party is defined in the Juvenile Protection Act as "any ... person made a party by an order to appear, or named by the juvenile court." Wyo. Stat. Ann. § 14-3-402(a)(xiv) (LexisNexis 2003). The juvenile court could allow the Tribe to remain a party for any reason. The juvenile court did not express any change in its decision that ICWA does not apply to the proceedings.