1999-NMCA-075

982 P.2d 497

**Sandra REAVES, Plaintiff–Appellant,**

v.

**Richard BERGSRUD, M.D.,
Defendant–Appellee.**

No. 19,536.

Court of Appeals of New Mexico.

May 5, 1999.

Paul S. Cronin, Duhigg, Cronin, Spring, & Berlin, P.A., Albuquerque, for Appellant.

Terri L. Sauer, Miller, Stratvert, & Torgerson, P.A., Albuquerque, for Appellee.

## OPINION

ALARID, Judge.

{1} Plaintiff filed a medical malpractice action against Defendant. After a trial by jury, Defendant was exonerated of any negligent action. On appeal, Plaintiff asserts that the trial court erred in (1) denying Plaintiff's motion to compel discovery regarding Defendant's mental health, and (2) denying her pretrial motion for leave to name a pathologist as an expert witness. We disagree and affirm the decisions of the trial court.

## FACTS

### A. *Complaint*

{2} On July 12, 1994, Plaintiff consulted with Defendant regarding an unidentified mass in her hand. After examining her, Defendant recommended exploratory surgery. On July 15, 1994, Defendant performed the surgery on an outpatient basis. The identity of the mass in Plaintiff's hand was in dispute. The Lea County Hospital pathologist thought the mass to be a benign neurofibroma, another pathologist in Dallas, identified the mass as a plexiform neurofibroma, and yet another pathologist, at University of New Mexico Hospital, identified the mass as an intraneural fibrolimpoma.

{3} After the surgery, Plaintiff began to complain of numbness in her thumb and several of her fingers, significant pain, and electrical shock sensations. In her complaint, Plaintiff asserted that these problems she was experiencing were a result of Defendant severing her median nerve during surgery and that he severed her nerve because his "standard of conduct was below the reasonable standard of care." Plaintiff alleged that as a proximate result of Defendant's alleged negligence, she has sustained "pain, suffering, disability, mental anguish, past and future medical expenses, loss of wages, and other general damages[.]" Plaintiff also asserted that Defendant was negligent in his diagnosis and postoperative care of her. De-

fendant answered Plaintiff's complaint and denied all allegations.

### B. *Motion to Compel*

{4} During discovery, Plaintiff learned that Defendant had been diagnosed as having a mental impairment. Plaintiff learned that the state of Florida had suspended Defendant's medical license in the summer of 1988 because he was suffering from bipolar disorder and had inappropriately quit his psychiatric care and medication. He was subsequently reinstated in the fall of 1988. Plaintiff also learned that in 1993, the states of New Mexico and California granted Defendant medical licenses on the condition that he continue to receive psychological treatment and take his medication. On May 20, 1994, the New Mexico Board of Medical Examiners lifted the condition on Defendant's medical license.

{5} On November 8, 1996, Plaintiff propounded interrogatories to Defendant asking: "When did you first come under the treatment of Ronald Monteverde, M.D. for treatment of your bipolar mood disorder?" and "Please identify by date and treatment given each visit you had with Dr. Monteverde from July 1993 through July 1994." Defendant objected, raising the physician-patient privilege and asserting that the information requested was irrelevant and was not calculated to lead to the discovery of any admissible evidence.

{6} During a deposition on March 24, 1997, Defendant stated that he was taking lithium, had been taking lithium in 1994, and had been seeing a psychiatrist every two to three months in 1994. When Defendant was asked whether he was still under medical treatment, his attorney objected that the relevant time period was 1994 and instructed Defendant not to answer. Defendant also refused to answer questions about a hearing scheduled in January 1997 concerning hospital privileges at Lea General Hospital and about the voluntary withdrawal of his privileges there. Plaintiff sought an order compelling discovery. On July 10, 1997, the district court heard the arguments of the parties on this issue. Plaintiff asserted

that information regarding Defendant's mental health at the time of treatment was crucial to her case and that Plaintiff had the right to know if his condition impaired Defendant at the time he treated her hand. Plaintiff contended that Defendant placed his mental health at issue when he denied that any state had previously revoked his license because he had failed to take his medication.

{7} Defendant responded by stating that his license to practice medicine was placed on probation for a period of time with the condition that he seek psychiatric treatment and take medication for his bipolar disorder. He also pointed out that his license was fully reinstated without condition. Defendant asserted that there was no evidence that he has ever stopped taking his medication since the time of his first bipolar episode in 1988. Additionally, Defendant argued that his own medical condition was not at issue. He denied that he deviated from any standard of care in his treatment of Plaintiff and noted that he has not argued that he made a mistake due to some diminished mental capacity. Last, Defendant asserted that information regarding his psychotherapy or medication at the time he was treating Plaintiff was inflammatory, prejudicial, and irrelevant.

{8} The district court found that Plaintiff had not produced any evidence that Defendant's mental health had an impact on his performance. Therefore, the district court denied Plaintiff's motion and stated that (1) Defendant's mental status at the time of Plaintiff's treatment was irrelevant to the proceedings, and (2) the information was confidential under Rule 11–504 NMRA1999, the physician-patient privilege.

{9} Plaintiff moved for reconsideration on March 30, 1998. The motion was supported by an affidavit of Dr. Donald Cummings filed on April 6, 1998. In response, Defendant filed (1) his own affidavit stating that at the time in question he was taking his medication as prescribed, and (2) an affidavit from Dr. Ronald Monteverde indicating that he was Defendant's psychiatrist at the time in question and that to the best of his knowledge, Defendant was compliant in taking his prescribed medication. The court denied the motion.

C. *Expert Witness*

{10} The district court held a pretrial conference on July 10, 1997. At this conference, the judge and the parties developed the pretrial scheduling order and the deadline for disclosing expert witnesses was set for August 10, 1997. Defendant's attorney announced at the hearing that Defendant would identify both a liability and causation expert. On August 7, 1997, Defendant named Dr. Steven Bauserman as an expert who would testify that the tumor found in Plaintiff's hand, not Defendant's conduct, was the cause of Plaintiff's problems. On August 28, 1997, Plaintiff made a motion to name an expert witness in neuropathology, if necessary. Plaintiff alleged that Defendant's naming Dr. Bauserman as an expert was the "first time they have raised the fact that the type of tumor that she had may be a factor in causing damage to the Plaintiff[,]" and that in fairness to Plaintiff, the court should allow her to name an expert. Plaintiff asserted that because she had not yet taken Dr. Bauserman's deposition it may be necessary for her to call a neuropathologist to respond to Dr. Bauserman's as-of-yet, unobtained testimony.

{11} Defendant responded by arguing that from the outset of this case the type of tumor and its effect on Plaintiff has been at issue. Also, Defendant asserted that there had been three different pathologists to examine the tissue sample and that all three had a different diagnosis.

{12} The district court denied Plaintiff's motion to name an expert witness. The court stated that it was going to strictly enforce deadlines and enforce the pretrial order as written. Therefore, the district court would not amend the August 10, 1997, deadline for naming expert witnesses. Dr. Bauserman was desposed on November 17, 1997.

## DISCUSSION

A. *Standard of Review*

{13} The standard of review for both issues presented is the same. The question is

whether the trial court abused its discretion. *See DeTevis v. Aragon,* 104 N.M. 793, 797–98, 727 P.2d 558, 562–63 (Ct.App.1986) ("A trial court's ruling limiting discovery is subject to reversal only upon a showing of an abuse of discretion."); *Gallegos v. Yeargin Western Constructors,* 104 N.M. 623, 624–25, 725 P.2d 599, 600–01 (Ct.App.1986) (stating that allowing witnesses to be named after pretrial deadline is reviewed for an abuse of discretion); *Tobeck v. United Nuclear–Homestake Partners,* 85 N.M. 431, 436, 512 P.2d 1267, 1272 (Ct.App.1973) (stating that denial of motion to amend pretrial order is reviewed for abuse of discretion). An abuse of discretion occurs when the trial court's ruling is against the facts, logic, and circumstances of the case or is untenable or unjustified by reason. *See State v. Rojo,* 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829.

### B. *Motion to Compel*

{14} Plaintiff asserts that the trial court abused its discretion by limiting discovery of Defendant's mental health at the time of Defendant's treatment of Plaintiff. We disagree. First, Plaintiff asserts that the trial court applied an incorrect evidentiary standard. Defendant properly notes that there is a presumption in favor of discovery and that the information being sought during discovery does not ultimately have to be admissible at trial. Rule 1–026(B)(1) NMRA1999; *Griego v. Grieco,* 90 N.M. 174, 181, 561 P.2d 36, 43 (Ct.App.1977) (Wood, C.J., and Hendley, J., specially concurring). However, as Defendant correctly asserts, the trial court is vested with the authority to limit discovery. *See State v.. Ramos,* 115 N.M. 718, 723, 858 P.2d 94, 99 (Ct.App.1993) *modified in part by State v. Gomez,* 1997–NMSC–006, ¶ 32, 122 N.M. 777, 932 P.2d 1. Additionally, "[w]here it appears that the party requesting discovery has already been granted sufficient information, discovery may properly be denied or limited." *DeTevis,* 104 N.M. at 798, 727 P.2d at 563.

{15} Defendant relies on several out-of-state cases to support the argument that "[a]bsent proof that a defendant physician's alleged medical impairment contributed to Plaintiff's injuries, discovery of the physi-

cian's treatment records is improper." *See Danielson v. Superior Court,* 157 Ariz. 41, 754 P.2d 1145 (Ct.App.1987); *Ornelas v. Fry,* 151 Ariz. 324, 727 P.2d 819 (Ct.App.1986); *Shamburger v. Behrens,* 380 N.W.2d 659 (S.D.1986). We find that two of the cited cases are particularly persuasive; *Ornelas* and *Shamburger.*

{16} During discovery in *Ornelas,* the plaintiff discovered that her treating physician had been treated for alcoholism and filed a motion to compel discovery of the physician's treatment records. 727 P.2d at 821. The court held that because the plaintiff was not able to produce any evidence that her physician's performance was in any way impaired by his alleged alcoholism at the time of the alleged malpractice it was not in error for the trial court to deny the plaintiff's motion to amend the complaint or to reconvene the medical liability review panel. *See id.* at 823–24. Additionally, the court held that the trial court did not abuse its discretion tailoring the scope of inquiry regarding the physician's alleged alcoholism. *See id.*

{17} In *Shamburger,* the plaintiffs claimed that the trial court erred in refusing to allow testimony that the treating physician allegedly had alcohol on his breath during work hours. 380 N.W.2d at 660–61. The trial court found that there was no evidence to support the plaintiffs' assertion that alcohol affected the physician's treatment. *See id.* at 661–62. Accordingly, the appellate court held that the trial court did not abuse its discretion in refusing to admit evidence regarding alcohol use because it could potentially mislead the jury and did not hamper the plaintiffs' efforts to show that the physician acted negligently. *See id.* at 662.

{18} In the present case, Plaintiff had already conducted broad discovery into Defendant's mental health. Plaintiff was aware that Defendant was bipolar and that he sought, on a regular basis, psychotherapy and took lithium to regulate his bi-polar episodes. Plaintiff had not, however, alleged that Defendant's mental health was the cause of the postoperative problems she was experiencing with her hand. Plaintiff, in fact, conceded that she "did not claim that Defen-

dant was impaired during the time of his treatment of her[ .]"

{19} Plaintiff also asserts that the trial court incorrectly concluded that the psychotherapist-patient privilege barred Plaintiff's discovery. We disagree. Rule 11–504(B) NMRA1999 provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, ... among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist[.]

The information that Defendant is seeking here is exactly the kind of information protected by the privilege.

{20} For the privilege to apply, the patient must have conferred with a physician for treatment or diagnosis with the intent to be treated. *See State v. Roper*, 1996–NMCA–073, ¶ 7, 122 N.M. 126, 921 P.2d 322. Following established case law in New Mexico, *Roper* recognized that, in some instances, it might not further the patient's interests to prohibit disclosing a "confidential" communication under the rule. For that reason, despite the language in the rule, *Roper* adopted the two-prong analysis first enunciated in *In re Doe I, II, III, IV, & V*, 98 N.M. 442, 447, 649 P.2d 510, 515 (Ct.App.1982). *See Roper*, 1996–NMCA–073, ¶ 12, 122 N.M. 126, 921 P.2d 322. Plainly, Defendant was a patient and he had consulted with a psychotherapist for treatment. Defendant attacks whether the communication was confidential. The appropriate analysis for this argument is (1) whether the patient intended that the communication be undisclosed, and (2) whether nondisclosure furthers the interest of the patient. *See id.* ¶ 11.

{21} The first prong, intent, is manifested when a party consents to treatment or diagnosis. "When a patient sees a physician for either (or both) of those purposes, it should be implicit that the information conveyed in the private consultation and exami-

nation is exclusively for the patient's eyes and ears, absent the patient's consent." *Id.* ¶ 12. Clearly, Defendant consented to treatment and diagnosis with his chosen psychotherapist and implicitly intended that their communications be undisclosed.

{22} Defendant can also easily establish the second prong, furthering the interest of the patient. Nondisclosure furthers the interest of Defendant because it prevents the public from gaining information about his mental health and encourages him to be frank when communicating with his psychotherapist. *See id.* ¶ 13; *In re Doe*, 98 N.M. at 447, 649 P.2d at 515 *overruled on other grounds by Roper*, 1996–NMCA–073, ¶ 12, 122 N.M. 126, 921 P.2d 322. Keeping his communications with his psychotherapist confidential not only furthers the privilege's policy of patient autonomy and privacy but Defendant's own privacy interests. *See Roper*, 1996–NMCA–073, ¶ 12, 122 N.M. 126, 921 P.2d 322; *In re Doe*, 98 N.M. at 447, 649 P.2d at 515.

{23} We hold that the trial court did not abuse its discretion in denying Plaintiff's motion to compel. Plaintiff had already performed sufficient discovery on this issue and Defendant's mental health was not relevant to Plaintiff's claim of malpractice. Additionally, Plaintiff did not allege that Defendant's mental health impaired Defendant's treatment of her, and absent this proof, the trial court properly limited discovery. Additionally, because we have determined that Defendant's communication with his psychotherapist is a confidential communication we hold that the psychotherapist-patient privilege applies here, and therefore the discovery sought could not lead to admissible evidence.

{24} On appeal, Plaintiff has not explained why the reasons for postponement of the January 1997 hearing at the hospital could lead to discovery of any admissible evidence. We therefore cannot reverse on that ground.

### C. *Expert Witness*

{25} The pretrial order stated that the deadline for naming an expert witness was August 10, 1997. Defendant listed his

experts in answer to Plaintiff's interrogatories on August 7, 1997. On August 14, 1997, Plaintiff named one expert, Dr. Jones. It was not until August 28, 1997, that Plaintiff moved for leave to later name an unidentified expert to possibly respond to Defendant's pathologist, Dr. Bauserman after the deposition of Dr. Bauserman. Plaintiff asserts that the trial court abused its discretion by denying her motion to name an expert witness. We disagree.

■ {26} Pretrial orders will control the course of action in a case unless a subsequent order modifies them. *See* Rule 1–016(E) NMRA1999. Plaintiff correctly notes that the trial court, in its discretion, may amend a pretrial order if it will not result in unfairness or to prevent injustice. *See id.; El Paso Elec. Co. v. Real Estate Mart, Inc.,* 98 N.M. 570, 572, 651 P.2d 105, 107 (Ct.App. 1982). Emphasis, however, must be placed on the premise that amendment or modification is discretionary. *See Gallegos,* 104 N.M. at 624, 725 P.2d at 600.

{27} Plaintiff asserts that the denial of her motion created unfairness to her and that she was unable to fully respond to Defendant's expert. From the beginning of this case, however, Plaintiff should have known that an expert to testify regarding causation would be necessary. Additionally, the pathological type of mass that was found in Plaintiff's hand has been at issue from the time of the exploratory surgery. Therefore, the need for such an expert was of no surprise to Plaintiff and there was no resulting unfairness to her.

{28} Plaintiff was on notice that Defendant was calling a liability and causation expert. It was not until after the deadline for naming experts had passed that Plaintiff decided to request an unidentified expert to testify on an unidentified subject matter if necessary. We will not interfere with the trial court's enforcement of pretrial deadlines. "Adherence to such scheduling orders are [sic] critical in maintaining the integrity of judicial proceedings." *1488, Inc. v. Philsec Investment Corp.,* 939 F.2d 1281, 1289 (5th Cir.1991). We are not persuaded that Plaintiff has demonstrated any prejudice by showing that she could have obtained such a desired expert for trial. We, therefore, hold that the trial court was well within its discretion in denying Plaintiff's motion.

**CONCLUSION**

{29} For the foregoing reasons, we affirm the decisions of the district court denying Plaintiff's motions to name an expert and to compel discovery regarding Defendant's mental health.

{30} **IT IS SO ORDERED.**

APODACA and HARTZ, JJ. (specially concurring).

HARTZ, Judge (specially concurring)

{31} I join in Judge Alarid's opinion, except for paragraphs 19 and 21. Despite prior opinions of this Court to the contrary, recognition of the confidentiality of a psychotherapist-patient communication should not depend on whether non-disclosure furthers the interests of the patient. The rule of evidence establishing the psychotherapist-patient privilege states:

A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the ... psychotherapist, including members of the patient's family.

Rule 11–504(A)(4) NMRA1999. The rule refers to "the interest of the patient" only for the purpose of determining whether the privilege is lost because of the presence of a third person at the time of the communication between the patient and the psychotherapist. If the third person is present to serve "the interest of the patient," the privilege is preserved. The rule requires no further inquiry into the patient's interests. *See State v. Roper,* 1996–NMCA–073, ¶ 11 n. 2, 122 N.M. 126, 921 P.2d 322. We should read the rule as it was promulgated by our Supreme

Court, rather than impose additional constraints on exercise of the privilege.