This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38758**

**KIMBERLY MONTAÑO,**

Plaintiff-Appellant,

v.

**LOVELACE INSURANCE COMPANY,**
**a domestic for-profit corporation,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Judge**

Jones, Snead, Wertheim & Clifford, P.A.
Jerry Todd Wertheim
Carol A. Clifford
Kaitlyn Delbene
Santa Fe, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
Nelson Franse
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}**     Plaintiff Kimberly Montaño appeals the district court's (1) grant of summary judgment to Defendant Lovelace Insurance Company (Lovelace), because the district court determined that expert testimony was required to establish the standard of care for a reasonable insurer and breach of that standard, (2) denial of Plaintiff's motion to

reconsider, and (3) denial of Plaintiff's motion to compel discovery. Finding no error, we affirm.

**BACKGROUND**

**{2}** Plaintiff's claims against her insurer, Lovelace, arise from alleged medical malpractice during a bariatric surgery. Lovelace told Plaintiff that her insurance would only cover the surgery if she used Dr. Eldo Frezza, an in-network, Texas-licensed physician. Years later, Plaintiff learned that the surgery "had left a tangled network of sutures" in her body, and she brought a claim against Lovelace, in relevant part, for "negligent referral." After Plaintiff designated experts, Lovelace moved for summary judgment and argued that Plaintiff could not establish a case against Lovelace, because she had "failed to designate an expert to opine regarding the alleged negligent referral/credentialing claim." The district court initially granted Lovelace's motion in part. After additional discovery, the district court granted Lovelace's renewed motion for summary judgment and denied Plaintiff's motion to compel additional discovery. Plaintiff filed motions to reconsider both rulings and argued for the first time that Lovelace had a nondelegable duty. After a hearing, the district court denied the motions to reconsider. Plaintiff appealed.

**DISCUSSION**

**{3}** On appeal, Plaintiff argues that no expert was required to prove Lovelace breached the duty of care or to establish a factual issue as to breach. Lovelace maintains that a number of Plaintiff's issues on appeal are not properly before this Court and that regardless, the district court correctly determined that an expert was required under these circumstances to establish the standard of care. We agree with Lovelace. We first review de novo the district court's grant of summary judgment based on the need for an expert. *See Villalobos v. Bd. of Cnty. Comm'rs*, 2014-NMCA-044, ¶ 5, 322 P.3d 439.

**I.      The District Court Properly Determined That Under These Circumstances, Plaintiff's Claims Require Expert Testimony**

**{4}** To determine whether an expert was required, the district court relied primarily on *Grassie v. Roswell Hospital Corp.*, 2011-NMCA-024, 150 N.M. 283, 258 P.3d 1075. In *Grassie*, the plaintiff argued that the hospital was negligent in allowing a doctor to work in the emergency room and maintained the claim was for ordinary negligence, not negligent credentialing, and therefore, an expert was not required. *Id.* ¶ 62. The plaintiff further contended that the contract between the hospital and the doctor sufficiently "set the standard of care." *Id.* ¶¶ 63-64. The *Grassie* Court considered the committee commentary to UJI 13-1119B NMRA, which observed that expert testimony would not be required and ordinary negligence standards would likely apply in "'a case in which the hospital entirely failed to inquire about, or utterly ignored, the existence of prior malpractice judgments against the physician'" but also noted that expert testimony might be required if the question involved whether a credentials committee "'reasonably

should have known of deficiencies in the applicant's competency based on the materials reviewed.'" *Grassie*, 2011-NMCA-024, ¶ 73 (quoting UJI 13-1119B comm. cmt.). In *Grassie*, the record showed no "utter failure to investigate" as the committee commentary contemplated, and the record revealed no prior malpractice claims and a physician application reflecting the doctor's experience and certifications. *Id.* ¶ 74. Further, while the contract was "evidence of a standard the [h]ospital set for itself," any "failure to follow it may or may not be negligent when viewed in the context of the entire screening process actually undertaken." *Id.* ¶ 77. Ultimately, "expert testimony was necessary to explain the credentialing process to jurors and establish the standard of care to be applied," which would necessarily "address the [contract], placing it in the context of the entire range of evidence detailing" what was known and should have been known before offering the doctor staff privileges. *Id.* ¶ 79.

**{5}** On appeal, Plaintiff argues that no expert was required, because Lovelace took no action to ensure that its duties were satisfied. Plaintiff identifies multiple sources from which Lovelace's duty to her arose, including the common law, offering only one doctor for her surgery, corporate negligence, actual or apparent agency, and a Managed Care Agreement (MCA). Lovelace entered into the MCA with Texas Tech Physicians Associates (TTPA) and delegated credentialing to TTPA but reserved an independent right to terminate and approve physicians. The MCA required physicians to submit a physician application to Lovelace and provide proof of malpractice insurance. Plaintiff contends that Lovelace did nothing to satisfy its duties, because Lovelace (1) had no records that Dr. Frezza either obtained malpractice insurance or submitted a physician application, (2) did not know about a prior medical malpractice settlement related to a similar surgery, and (3) did not review TTPA's credentialing. These facts, however, and the multiple potential sources for Lovelace's duty, are not evidence that establishes the standard of care for a reasonable insurer, which in the professional negligence context is generally required to be shown by expert testimony. *See Oakey, Est. of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶¶ 24-25, 399 P.3d 939 (distinguishing duty from standard of care and observing that "[t]he professional standard of care generally must be established by expert testimony").

**{6}** As Lovelace points out, this is particularly true considering that its duties must be viewed in light of TTPA's duties, and the jury should consider what was reasonable for Lovelace to do given that credentialing was delegated to TTPA. Further, Plaintiff does not persuasively distinguish *Grassie*'s analysis from this case. Plaintiff differentiates *Grassie* factually and by noting that in *Grassie* there was a physician application and no prior medical malpractice claims, but in the present case the opposite is true. These distinctions, however, do not alleviate the need for an expert to put the facts in the context of a particular standard of care and to allow the jury to determine whether the absent physician application and previously undiscovered malpractice settlement establish a breach of Lovelace's duties to Plaintiff under the circumstances.

**{7}** The district court thoroughly considered the application of *Grassie* and the need for an expert, and we agree with the district court's analysis, as set forth below. The district court characterized Plaintiff's claim as "based on Lovelace's failure to

independently determine Dr. Frezza's competence to perform the type of surgery that he performed on Plaintiff before Lovelace referred Plaintiff to him." The district court noted that the *Grassie* Court did not focus on the claim as a "credentialing claim." Instead, the district court explained, the *Grassie* Court "looked to the nature of the evidence needed to prove the plaintiff's claim that the [h]ospital was negligent in allowing the doctor to work as an emergency room physician." The district court accepted the Plaintiff's asserted facts that (1) Lovelace entered the MCA with TTPA; (2) the MCA required Dr. Frezza to fill out a physician application; (3) the purpose of the physician application was to ensure that Dr. Frezza met "the standards of practice and competency for providing care to Lovelace insureds, separate and apart from the credentialing process" performed by TTPA; (4) the MCA permitted Lovelace to terminate Dr. Frezza independently of TTPA; and (5) Dr. Frezza did not complete the physician application or maintain professional malpractice insurance. The district court further took note of Plaintiff's allegation that "Lovelace should have known that Dr. Frezza settled a [prior] malpractice lawsuit arising from a 'similar' bariatric surgery procedure performed in 2001." The district court determined these facts were the same as the *Grassie* facts—absent the settlement evidence—including that similar to Lovelace, the *Grassie* hospital was "bound by contractual obligations to independently investigate and determine the physician's eligibility and qualifications."

**{8}**     The district court observed that *Grassie* could permit "a negligent referral claim to proceed on an ordinary negligence theory ([i.e.,] without expert testimony to explain the standard of care and its breach) when the hospital's negligence in credentialing a medical professional was 'obvious.'" In considering the need for expert testimony, the district court noted that although Lovelace did not receive the physician application or determine that Dr. Frezza had professional liability insurance, the obligation to credential had been delegated to TTPA. Under these circumstances, the district court reasoned that "the jury would be faced with the question as to whether Lovelace did enough to ensure that it was referring Plaintiff to a competent physician" and "[t]hat is not an issue that is within the knowledge of a lay juror." The district court explained why expert testimony was necessary to establish the standard of care and breach:

> [T]he standard of care is not simply for Lovelace to "follow its own rules." Certainly those "rules" would be one factor for an expert to consider when opining on what the standard of care would be for Lovelace here, but *Grassie* made clear that a contractual obligation to delve into Dr. Frezza's background is not sufficient to bring these types of physician-competency issues within the knowledge of ordinary people.

> Likewise, whether that standard of care was breached is not as simple as Lovelace having failed to "follow its rules." As with the existence of the duty and the standard of care owed by Lovelace to Plaintiff, the breach of that duty is one that must be supported with expert testimony. The extent to which Lovelace should have evaluated information about Dr. Frezza's past employment history—both negative and positive—in order to qualify him as a competent surgeon to treat their insureds is not a question that a

lay person could resolve. This is especially true on the additional fact here, where TTPA was tasked with actually credentialing Dr. Frezza.

Although the district court determined that Plaintiff's evidence of the malpractice settlement was inadmissible hearsay, the district court also explained that evidence of another malpractice case highlighted the need for expert testimony, because an expert would need to explain the standard of care for insurers with regard to researching past malpractice claims.

**{9}**     We agree that an expert was required to establish the standard of care for Plaintiff's negligent referral claim against Lovelace, and absent such an expert summary judgment was appropriate.

## II.     The District Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion to Reconsider

**{10}**     Plaintiff additionally contends that the district court improperly denied her motion to reconsider. In that motion, Plaintiff asserted for the first time to the district court that Lovelace had a nondelegable duty to "select or retain" the allegedly negligent doctor. Plaintiff argued that under a theory of nondelegable duty, no expert testimony was required, because "the jury acts as the collective 'reasonable prudent person' and decides whether Lovelace, if it had full knowledge of the risks presented by [the doctor] in performing bariatric surgery on [Plaintiff], took reasonable precautions to protect her." The district court rejected Plaintiff's argument for two reasons: (1) Plaintiff raised nondelegable duty too late and permitting the new theory to go forward would have prejudiced Defendant; and (2) as a matter of law, there was "not a nondelegable duty for a healthcare insurer to select competent medical professionals to whom insureds are referred." We hold that the district court did not abuse its discretion in denying the motion to reconsider, *see Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628, and briefly explain.

**{11}**     The holder of a nondelegable duty "cannot delegate the responsibility" to take reasonable precautions. *Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 15, 113 N.M. 387, 827 P.2d 102. Specifically, "one who employs an independent contractor to do work that the employer as a matter of law should recognize as likely to create a peculiar risk of physical harm to others unless reasonable precautions are taken is liable for physical harm to others caused by an absence of those precautions." *Id.*

**{12}**     Our Supreme Court explained that sometimes expert testimony is required to establish nondelegable duty claims:

> We also believe that whether work is inherently dangerous is a question of law, even though we recognize there may be gray areas requiring fact-finding. As discussed below, the [C]ourt decides whether the established facts gives rise to an inherently dangerous activity. If so, the jury decides under the evidence and *by expert* and lay testimony: (1) what precautions

would be deemed reasonably necessary by one to whom knowledge of all the circumstances is attributed, and (2) whether the absence of a necessary precaution was a proximate cause of injury.

*Id.* ¶ 17 (emphasis added). In the present case, for the same reasons set forth by the district court in granting summary judgment, an expert was necessary to identify "what precautions would be deemed reasonably necessary" for Lovelace to take in order to avoid the risks of bariatric surgery and whether the absence of those precautions caused Plaintiff's injuries. *Id.* We therefore conclude that assuming the nondelegable duty was triggered by these circumstances, the district court did not abuse its discretion in denying Plaintiff's motion to reconsider.

### III.     The District Court Did Not Abuse Its Discretion In Denying Plaintiff's Motion to Compel

**{13}**     To the extent Plaintiff appeals the district court's denial of her motion to compel, that motion requested the district court to order that a Rule 1-030(B)(6) NMRA deposition  be continued, because the witness was not prepared. The district court had already extended the discovery deadline and given Plaintiff six additional weeks to conduct discovery, including the disputed deposition. The Lovelace witness for the Rule 1-030(B)(6) deposition was prepared to testify about the time period that Plaintiff had designated in the notice of deposition, and as the district court noted, none of the additional discovery that Plaintiff sought in the motion to compel would have freed her claim from "the requirements of *Grassie* for expert testimony." We discern no abuse of discretion. *See Reaves v. Bergsrud*, 1999-NMCA-075, ¶ 23, 127 N.M. 446, 982 P.2d 497 (applying an abuse of discretion standard of review to the denial of a motion to compel).

### CONCLUSION

**{14}**     For the reasons set forth herein, we affirm.

**{15}     IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**