The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: January 22, 2026

**NO. S-1-SC-40434**

**SUZANNE BURNS,**

Plaintiff-Petitioner,

v.

**PRESBYTERIAN HEALTHCARE SERVICES and NAVJEET KAUR, M.D.,**

Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Joshua A. Allison, District Judge**

Fine Law Firm
Mark Fine
Joseph M. Fine
James Johnson
Albuquerque, NM

for Petitioner

Hinkle Shanor LLP
Kathleen M. Wilson
Hari-Amrit Khalsa
Albuquerque, NM

for Respondent Presbyterian Healthcare Services

Holland & Hart LLP
Larry J. Montaño

Olga Serafimova
Santa Fe, NM

for Respondents Presbyterian Healthcare Services and Navjeet Kaur, M.D.

Madison, Mroz, Steinman, Kenny & Olexy, P.A.
M. Eliza Stewart
Jacqueline A. Olexy
Albuquerque, NM

for Respondent Navjeet Kaur, M.D.

**OPINION**

**GURLEY, Judge.**

{1}     Plaintiff Suzanne Burns sued Defendants Presbyterian Healthcare Services (PHS) and Dr. Navjeet Kaur for medical malpractice. Months after the expert witness disclosure deadline, and several weeks after the discovery deadline, Plaintiff provided new untimely expert witness opinions on causation in response to Defendants' motions for summary judgment. The untimely expert witness opinions were in the form of an affidavit attached to her response, which the district court found contradicted that expert's prior deposition testimony on the issue. Defendants also filed motions to strike the expert's affidavit. The district court took two, distinct steps: it granted Defendants' motions to strike the new, untimely affidavit, and then granted Defendants' motions for summary judgment for lack of causation. On appeal, Plaintiff argues that striking the affidavit containing the causation opinions was effectively a sanction of dismissal, for which the district court should have considered lesser sanctions. We agree with the Court of Appeals that the district court did not abuse its discretion in granting the motions to strike, but for different reasons. Rather than affirming the exclusion of testimony as a "lesser" sanction for violation of the scheduling order, we hold that the district court properly exercised its inherent authority to enforce its scheduling order. *Burns v. Presbyterian*

*Healthcare Servs.*, mem. op. A-1-CA-38594, ¶ 3 (N.M. Ct. App. Jan. 9, 2024) (nonprecedential).[1]

## I.       BACKGROUND

{2}      The parties do not dispute the following facts. In June and July of 2014, Plaintiff underwent a series of medical procedures and treatments at Presbyterian Hospital. She had a cholecystectomy (gallbladder removal) on June 26, 2014. The next day she was discharged from the hospital by Dr. Kaur, even though her lab test results were abnormal. Plaintiff returned to the hospital's emergency room three days later and was diagnosed with, and treated for, pneumonia and bilateral pulmonary emboli with a saddle embolus. Six days later, she was discharged a second time. She returned to the hospital's emergency department two days later with abdominal pain. Plaintiff was then diagnosed with a bile leak and spent a total of seven weeks in the hospital undergoing treatment.

{3}      In June of 2017, Plaintiff filed a complaint for medical negligence against Defendants. The district court issued its scheduling order in December of 2018. The scheduling order provided that Plaintiff was to file expert disclosures by April 1,

---

[1]The referenced Court of Appeals disposition was inadvertently titled and filed as a decision. The disposition should be titled memorandum opinion. The citations within this opinion reference the filing as a memorandum opinion.

2019, both parties were to complete pretrial discovery by June 28, 2019, and dispositive motion packets were to be completed by August 23, 2019. The scheduling order specified that it could "be modified only by court order upon a showing of good cause."

{4} Plaintiff first disclosed Dr. Walid Arnaout as an expert witness in discovery responses. During Dr. Arnaout's deposition, Defendant PHS questioned Plaintiff's expert about whether Plaintiff had a diagnosable bile leak when she was initially discharged from the hospital and whether the discharge caused her injury. In particular, Dr. Arnaout was asked if he believed the bile leak was diagnosable before Plaintiff was first discharged, resulting in the following questioning and testimony:

[Dr. Arnaout]: That's not what I'm saying. I said she had abnormal liver function tests postop. That should have been investigated to determine if there [was] a bile leak or a bile duct obstruction or something else.

[PHS attorney]: Okay. So, when do you believe that she first had a bile leak?

[Dr. Arnaout]: I don't know.

[PHS attorney]: Okay. But you definitely -- do you believe that she had a bile leak that could have been diagnosed sooner than it was?

[Dr. Arnaout]: Well, she had a bile leak. We know it happened. When it happened, I don't know. I can't tell you.

[PHS attorney]: So when do you believe it should have been diagnosed?

[Dr. Arnaout]: I can't tell you.

[PHS attorney]: Okay. Would her treatment for this bile leak have been any different had it been diagnosed sooner just hypothetically? If it had been diagnosed sooner hypothetically, would the treatment for it have been any different?

[Dr. Arnaout]: The first treatment still would have been an ERCP and a stent placement, which is what she had.

{5} After the deposition, Plaintiff filed an expert witness disclosure and identified Dr. Arnaout and Dr. Nader Kamangar as witnesses who would "testify that agents of the [D]efendant [PHS] failed to properly diagnose surgical complications and should not have discharged the [P]laintiff from the hospital in the absence of confirming diagnoses and treatment." Plaintiff did not identify Dr. Arnaout as her causation witness or state that he would testify that discharging Plaintiff caused her injuries. After the close of discovery, Defendants each filed a motion for summary judgment, arguing that Plaintiff did not have evidence of causation. The next day Plaintiff filed an amended expert witness disclosure, adding a paragraph to the summary of Dr. Arnaout's expected testimony. The amended disclosure stated that Dr. Arnaout would testify "that by discharging Plaintiff on June 27, 2014 and July 5, 2014 without following up on the abnormal results of her liver function tests, Defendants breached the standard of care and caused Plaintiff's injuries and damages." Plaintiff later responded to the motions for summary judgment and attempted to supplement her expert's opinions by attaching an affidavit from Dr.

4

Arnaout to the response. In that affidavit, Dr. Arnaout stated, "I believe to a reasonable degree of medical probability that [the bile leak] occurred . . . before [Plaintiff's] June 27, 2014 discharge" and that "any reasonable investigation into the cause of [Plaintiff's] elevated bilirubin level on June 27, 2014 would have revealed the bile leak within a couple days." Defendants then filed separate motions to strike Dr. Arnaout's affidavit, arguing that the affidavit provided new, contradictory expert opinion evidence for the first time in response to Defendants' motions for summary judgment.

{6}     After a hearing on the issue, the district court granted Defendants' motions to strike, finding that Plaintiff's expert disclosure was untimely. The expert disclosure was due April 1, 2019, discovery closed June 28, 2019, and Plaintiff never sought leave to amend either the scheduling order or her expert disclosure. The district court noted that this was not a case where new information or evidence had caused Plaintiff's expert to change or modify his opinions, and consequently Plaintiff did not show good cause to amend the scheduling order. It further found that Defendants would suffer prejudice if Plaintiff was allowed to disclose new expert opinions after the close of discovery. Additionally, the district court found that Dr. Arnaout's deposition testimony was contrary to his affidavit. When asked directly during his deposition, he could not say if the bile leak was diagnosable before discharge, but in

the affidavit, he stated it *was diagnosable* before discharge. The district court struck the affidavit, leaving Plaintiff without proof of causation. Accordingly, the district court granted Defendants' motions for summary judgment.

{7}    Plaintiff appealed both rulings. *Burns v. Presbyterian Healthcare Servs.*, A-1-CA-38594, mem. op. (N.M. Ct. App. Jan. 9, 2024) (nonprecedential). The Court of Appeals affirmed the district court's order granting both motions. *Id.* ¶ 2. It reasoned that not only was the affidavit untimely, but it was inconsistent with Plaintiff's earlier expert disclosure and Dr. Arnaout's deposition testimony. *Id.* ¶ 3. It determined that the striking of the affidavit was a lesser sanction, *id.*, which did not require a finding of willfulness or the consideration of lesser sanctions. *See Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶ 31-33, 120 N.M. 151, 899 P.2d 594. The Court of Appeals held that the district court did not abuse its discretion. *Burns*, A-1-CA-38594, mem. op. ¶ 1. Based on the holding that the district court did not abuse its discretion in striking the affidavit as a lesser sanction, the Court of Appeals further affirmed the grant of summary judgment, because Plaintiff could provide no evidence of medical causation. *Id.*

{8}    Plaintiff appealed to this Court, asking us to address whether a lesser sanction that results in dismissal on summary judgment must undergo the same scrutiny applied to a dismissal sanction. As explained below, because the district court did

6

not impose a lesser sanction but instead enforced the scheduling order, we decline to address Plaintiff's question on scrutiny for lesser sanctions and instead affirm the Court of Appeals' memorandum opinion on these different grounds.

## II.  DISCUSSION

### A.  Standard of Review

{9}  We review the district court's ruling to strike the affidavit for abuse of discretion. *Reaves v. Bergsrud*, 1999-NMCA-075, ¶ 13, 127 N.M. 446, 982 P.2d 497 (noting that a district court's pretrial decisions to manage cases are reviewed for abuse of discretion). "We will find an abuse of discretion when the court's decision is without logic or reason, or . . . clearly unable to be defended." *Surgidev Corp.*, 1995-NMSC-047, ¶ 30 (omission in original) (internal quotation marks and citation omitted).

### B.  The District Court Did Not Abuse Its Discretion When It Granted the Motion to Strike

{10}  The district court's findings to grant the motions to strike were not unreasonable or "unable to be defended." *Id.* The district court reviewed the parties' motion packets, including Dr. Arnaout's deposition and affidavit; heard lengthy argument on the motions to strike; and explained its findings in a detailed written order. The district court found Plaintiff's initial expert disclosure was inadequate because it lacked specificity—Plaintiff did not identify Dr. Arnaout as her causation

7

expert and did not state Dr. Arnaout's opinion regarding causation. It found Dr. Arnaout's affidavit was offered after multiple scheduling order deadlines and contradicted his prior deposition testimony and opinion. It further noted that Plaintiff did not move the district court to amend the scheduling order or provide good cause for the untimely disclosure. The district court also found that the untimely affidavit was prejudicial to Defendants. Because discovery had already closed, Defendants would have to redepose witnesses, refile dispositive motions, and the jury trial would have to be postponed. The district court found that allowing the affidavit to stand would cause undue delay and additional expense. Viewing these facts in the light most favorable to the district court's ruling, these findings are not clearly against logic or the circumstances of the case. The district court did not abuse its discretion in granting Defendants' separate motions to strike.

**C.      The District Court Did Not Sanction Plaintiff but Instead Properly Used Its Inherent Authority to Strike the Untimely and Contradictory Affidavit**

{11}      Plaintiff argues that the trial court in this case inappropriately applied the severe sanction of dismissal. A *discovery sanction* is a "penalty levied by a court against a party or attorney who abuses the discovery process or inexcusably fails to comply with another party's discovery requests or the court's discovery orders." *Sanction*, *Black's Law Dictionary* (12th ed. 2024). The power to sanction is rooted

8

both in the rules and in the district court's inherent authority, and is distinct from the district court's implied authority to manage its docket. Under the New Mexico Rules of Civil Procedure, failure to comply with a scheduling order can result in sanctions. Rule 1-016(F) NMRA. The form of those sanctions is borrowed from Rule 1-037(B)(2)(b)-(c) NMRA, and includes "prohibiting that party from introducing designated matters in evidence" and "striking out pleadings or parts thereof." District courts also have the inherent authority to impose sanctions. *See State v. Le Mier*, 2017-NMSC-017, ¶¶ 18-19, 394 P.3d 959 (explaining that "trial courts shoulder the significant and important responsibility of ensuring the efficient administration of justice" and that "courts may impose meaningful sanctions to effectuate their inherent power and promote efficient judicial administration").

{12}     While district courts have specific authority inherently and under the New Mexico Rules of Civil Procedure to issue sanctions, district courts also have broad "implied powers." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (internal quotation marks and citation omitted). This power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (internal quotation marks and citation omitted). Our appellate courts have consistently held that district courts have authority to manage their docket. *Lewis ex rel. Lewis v.*

9

*Samson*, 2001-NMSC-035, ¶ 26, 131 N.M. 317, 35 P.3d 972; *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶¶ 11-12, 120 N.M. 1, 896 P.2d 1148; *see also Reaves*, 1999-NMCA-075, ¶ 28 (stating "[w]e will not interfere with the trial court's enforcement of pretrial deadlines. Adherence to such scheduling orders [is] critical in maintaining the integrity of judicial proceedings" (alteration, internal quotation marks, and citation omitted)).

{13} Plaintiff points out that Rule 1-016(F) permits the district court to impose sanctions to remedy violations of scheduling orders, and reasons that any action taken to enforce a scheduling order is a sanction. We disagree with Plaintiff. Though Rule 1-016(F) permits sanctions as a method to enforce scheduling orders, it does not follow that all actions to enforce scheduling orders are therefore sanctions. Rather, Rule 1-016(F) is but one source of power in managing scheduling orders, while the implied authority to manage a docket is a separate source of power. The exercise of this power does not as a matter of course constitute a sanction.

{14} In the present case, the record shows the district court did not impose a sanction but instead exercised its authority to enforce a scheduling order by granting Defendants' motions to strike the expert's untimely affidavit. Specifically, the district court found the affidavit—which was meant to supplement the expert disclosure—was filed over three months after the scheduling order deadline. While

10

trial courts may amend a scheduling order when a party shows good cause, Plaintiff never sought to amend the scheduling order. *See State ex rel. State Highway Dep't v. Branchau*, 1977-NMSC-048, ¶ 9, 90 N.M. 496, 565 P.2d 1013. Instead, Plaintiff bypassed the process for demonstrating good cause—required to amend the scheduling order—when she filed an untimely amendment to the expert disclosure and later attached the affidavit with the expert's new opinions to her summary judgment response.

{15}     The district court also found that the untimely affidavit was highly prejudicial to Defendants. Because discovery had already closed, Defendants would have to redepose witnesses, refile dispositive motions, and the jury trial would have to be postponed. The district court found allowing the affidavit to stand would cause undue delay and additional expense. The district court therefore declined to permit an action in violation of the scheduling order for multiple reasons: (1) Plaintiff's actions were not permitted by the scheduling order, (2) Plaintiff did not attempt to show good cause to amend the scheduling order, and (3) the affidavit would have prejudiced Defendants. This determination was well within the district court's discretion and authority to manage its docket. Because this ruling was not "without logic or reason," there was no abuse of discretion in making this determination.

## III. CONCLUSION

{16}    Plaintiff claims that by striking her expert's affidavit as untimely, the district court in this case imposed the severe sanction of dismissal and in doing so, abused its discretion. However, the record shows that Plaintiff attempted to amend an expert witness disclosure after the scheduling order deadline without requesting an amendment to the scheduling order. Accordingly, we hold that the district court did not sanction Plaintiff by striking the affidavit and instead properly exercised its discretion and inherent authority to enforce the scheduling order. We therefore affirm.

{17}    **IT IS SO ORDERED.**

**CURTIS R. GURLEY, Judge**
**Sitting by designation**

12

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**


_____
**MICHAEL E. VIGIL, Justice**


_____
**BRIANA H. ZAMORA, Justice**


_____
**KATHERINE WRAY, Judge**
**Sitting by designation**

13